UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COTTON EXCHANGE INVESTMENT PROPERTIES, LLC | * * | CIVIL ACTION |
| V. | * * | NO. 16-17543 |
| XCEL AIR CONDITIONING SERVICES, INC. ET AL | * * | SECTION "L"(5) |

## ORDER & REASONS

Before the Court is Defendant Xcel Air Conditioning Services, Inc. Motions to Dismiss for Failure to State a Claim. R. Docs. 17, 35. Plaintiff opposes the motion. R. Doc. 24. The Court held oral arguments on this matter on August 23, 2017. Having considered the parties' arguments, submissions, and the applicable law, the Court now issues this Order and Reasons.

### I. BACKGROUND

This case arises from damages allegedly resulting from defective maintenance and repairs to the HVAC system of a New Orleans hotel. R. Doc. 1 at 1. Plaintiff Cotton Exchange Investment Properties LLC ("CEIP"), a Delaware limited liability company, alleges that its hotel property was damaged by water and moisture exposure during a renovation of the HVAC system performed by Defendant Xcel Air Conditioning Services, Inc. R. Doc. 1 at 1. Xcel Air Conditioning Services ("Xcel") is a Louisiana corporation that performs HVAC installations and repairs. R. Doc. 1 at 1. Defendant Commercial Renovation Service, Inc. ("CRS") is a Georgia corporation that provides general contracting services. R. Doc. 23 at 2. Defendant John T. Campo & Associates is a Louisiana corporation that specializes in architectural and engineering services.[1] R. Doc. 23 at 2.

Plaintiff contends that in 2014, Supreme Bright New Orleans LLC ("Supreme Bright")

---

[1] Defendants CRS and Campo were added to the suit in Plaintiff's amended pleadings. R. Doc. 23.

owned the Cotton Exchange Building in downtown New Orleans and executed several contracts for its renovation. R. Doc. 23 at 2. In January 2014, Supreme Bright contracted with Xcel to provide HVAC services, including the maintenance of the hotel's cooling tower, roof top units, and chilled water pumps. R. Doc. 1 at 3. That same month, Supreme Bright entered into a contract with Campo whereby Campo would provide architectural, design, and engineering services. R. Doc. 23 at 4. A few months later, Supreme Bright contracted with CRS to serve as general contractor for the project. R. Doc. 23 at 2. Management of the HVAC system was included in both the contracts with Campo and CRS. R. Doc. 23 at 3, 4. In June 2015, the hotel was bought by Pacific Hospitality Group ("PHG"), who assumed the rights to all three contracts. R. Doc. 1 at 3. PHG subsequently assigned all of its rights, title, and interest in the purchase to Plaintiff, including the contracts with Xcel, Campo, and CRS. R. Doc. 1 at 4. Plaintiff alleges that under the terms of the contract, all three defendants agreed to indemnify CEIP for any property damage caused by negligent acts or omissions related to the scope of the work. R. Doc. 1 at 5; R. Doc. 23 at 3-4.

Plaintiff alleges that the hotel suffered serious water/moisture damage as a result of Xcel's defective or faulty workmanship, including water damaged walls and floors due to exposed chilled water piping, missing or improperly sealed insulation, and cracked or leaking draining pans. R. Doc. 23 at 7. Plaintiff alleges that due to this extensive damage, they had to close the hotel and incurred damages from loss of use and repairs. R. Doc. 23 at 6. Plaintiff canceled the HVAC contract pursuant to its terms in December 2015, and notified Xcel of the damage on three occasions. R. Doc. 1 at 5, 6. It appears that Xcel did not respond to the demand for indemnity. R. Doc. 1 at 6. Additionally, Plaintiff avers that it demanded indemnity from CRS and Campo, but was unsuccessful in its demand. R. Doc. 23 at 7.

Plaintiff's theory of recovery involves breach of contract and negligence claims against all

three Defendants and breach of warranty of good workmanship claims against CRS and Campo. R. Doc. 23 at 7-16. Plaintiff alleges that it owns the rights to the three contracts and that defects and deficiencies in the work each party performed caused extensive damage to the floors, walls, and other aspects of the hotel. R. Doc. 23 at 7-16. Plaintiff argues that each defendant breached its respective contract by failing to properly perform the required work and failing to indemnify Plaintiff for the resulting damage. R. Doc. 23 at 7-16. Plaintiff also alleges that the damage was the direct and proximate result of the parties' negligence. R. Doc. 23 at 9. Plaintiff avers that each party owed a duty of reasonable care to perform its work in a manner that did not create an unreasonable risk of harm, and that each party negligently violated this duty when it unreasonably damaged the hotel. R. Doc. 23 at 9. Plaintiff also asserts that the parties knew, or should have known, that negligent performance would cause harm. R. Doc. 23 at 9.

## II. PRESENT MOTIONS

Defendant Xcel filed a motion to dismiss for failure to state a claim, arguing that Plaintiff's alleged facts are insufficient to state a plausible claim for relief.[2] R. Doc. 17 at 1. In particular, Xcel avers that Plaintiff brings suit for breach of a contract to which it is not a party and for which there can be no assignment of benefits. R. Doc. 17 at 1. Xcel argues that the contract does not identify Plaintiff as a beneficiary of the contract or a party with any rights under it. R. Doc. 17-1 at 2. Defendant further alleges that the agreement between PHG and Plaintiff failed to assign any rights to the HVAC contract from PHG to Plaintiff, and that such an assignment is not allowed under Louisiana law. R. Doc. 17-1 at 2.

---

[2] Defendants submitted two motions to dismiss – one in response to the original complaint and the other in response to the supplemental complaint. Defendants' motions are virtually identical, save for the inclusion of the additional parties. R. Docs. 17, 35.

### III. LEGAL STANDARDS

#### a. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." When a court considers a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiff must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

#### b. Louisiana Contractual Interpretation

"The words of a contract must be given their generally prevailing meaning." La. Civ. Code. art. 2047; *see also Cadwallader v. Allstate Insurance Company, et al.*, 2002-1637 (La. 6/27/03), 848 So.2d 577, 580. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code. art. 2046. "When interpreting a contract, the court must discern the parties' common intent." *Cadwallander*, 8848 So. 2d at 580. "Where the terms of the contract are clear and explicit and do not lead to absurd consequences, no further interpretation may be made in search of the intent of the parties." *Id.* "'[W]ords of a contract must be given their generally prevailing meaning,' but '[w]ords of art and technical terms must be given their technical meaning when

the contract involves a technical matter.'" *Id.* (quoting La. Civ. Code. art. 2047) (alterations in original). "Each provision in [the] contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code. art. 2050.

## IV. DISCUSSION

Defendant Xcel argues that dismissal is required for three reasons. First, Xcel avers that the HVAC contract is "strictly personal," and thus its assignment is prohibited under Louisiana law. R. Doc. 17-2 at 3-4. Second, Xcel contends that because the contract could not be assigned, Plaintiff's claims are precluded by the subsequent purchaser doctrine. R. Doc. 17-2 at 5. Third, Xcel avers that the case must be dismissed because Plaintiff's complaint failed to include proof of the assignment from PHG. R. Doc. 17-1 at 2. However, Xcel's argument is untenable because the HVAC contract is not strictly personal. Thus, the contractual rights could be assigned to CEIP, and if they were, the subsequent purchaser doctrine is irrelevant. Regarding whether the contractual rights were in fact assigned, Plaintiff's complaint includes sufficient facts to bring the claim.

### a. The HVAC Service Contract Was Not Strictly Personal Because It Did Not Require Xcel's Unique Skills, Nor Was It for Supreme Bright's Exclusive Benefit.

Under Louisiana Civil Code Article 1984, contractual rights and obligations are heritable and assignable unless the law, terms, or nature of the contract preclude assignment. Strictly personal contracts, which involve a "performance [that] can be enforced only by the obligee, or only against the obligor," are unassignable. La. Civ. Code art. 1766. Under Article 1766, an obligation is presumed to be strictly personal when it requires the special skills or qualifications of the obligor, or when the performance is intended for the exclusive benefit of the obligee. However, the Louisiana Civil Law Treatise emphasizes that the parties' intent and the nature of

the performance are more indicative of whether the contract is strictly personal than rigid adherence to the general rule. 5 Saul Litvinoff & Ronald J. Scalise Jr., Louisiana Civil Law Treatise, Law of Obligations § 4.11 (2d ed. 2016).

Contractual rights and obligations may be strictly personal on the part of the obligor or obligee. A strictly personal contract on the part of the obligor requires the obligor's special skills and qualifications. Such contracts are generally not assignable because the obligee likely relied on that specific provider for a particular reason such as skill, education, training, experience, social status, or professional standing. *Id.* § 4.12. Allowing a contract to be assigned to a substitute party would frustrate an obligee who selected that particular obligor to perform the duties of the contract. *Id.* The quintessential example of this type of contract is the one between a portrait subject and the artist. Because the artist was selected for this particular ability and style, he may not transfer his obligation to paint the portrait to another artist. However, the classification of such contracts as strictly personal is merely a presumption. La. Civ. Code art. 1766. Thus, a contract requiring a special or unique skill may not be strictly personal when the obligee demonstrates that it would be content receiving performance from another professional. 5 Litvinoff & Scalise, § 4.12. Ultimately, the Louisiana Civil Law Treatise notes that "a different conclusion should prevail upon a clear showing of strong circumstances indicating a contrary intent of the parties." *Id.*

Alternatively, a contract may be strictly personal on the part of the obligee if it is for the obligee's exclusive benefit. La. Civ. Code art. 1766. Such an obligation is enforceable by the obligee alone, who retains the sole interest in performance. 5 Litvinoff & Scalise, § 4.13. As the Louisiana Civil Law Treatise explains, unlike an obligation strictly personal on the part of the obligor, an obligation that is strictly personal on the part of the obligee may be heritable because

the obligor's performance is not frustrated or encumbered by a change in obligee. *Id.*

Louisiana courts emphasize that the decisive element in determining whether a contract is strictly personal is the nature of the performance. For example, in *Bryan v. Griggs*, the Second Circuit Court of Appeals of Louisiana found that a contract for a particular real estate developer's services in real estate financing, tax planning, and economic development was strictly personal. 128 So.3d 1255, 1264 (La. Ct. App. 2013). The court reasoned that Plaintiff's representations regarding his myriad of special skills, lengthy resume, and previous work as an economic development consultant induced Defendants to engage his services. *Id.* By holding himself out as such a distinctly qualified candidate, Plaintiff obligated himself to performing services that he was uniquely able to provide. *Id.* Thus, the court found that Plaintiff could not assign his obligation to other members of his corporation because there was no demonstration "that any person associated with [the company] had the skills or qualifications possessed by Bryan." *Id.* at 1265. Because Plaintiff, and Plaintiff alone, had the requisite skills to fulfill the obligation, the contract was strictly personal and thus unassignable. *Id.*

Similarly in *Victorian v. Victorian*, the Louisiana Supreme Court considered whether a contract under which one brother conveyed land to his younger brother in exchange for a lifetime of personal care was strictly personal to either party. 411 So.2d 473, 476-77 (La. Ct. App. 1982). The court held that it was strictly personal to the defendant, who was obligated to care for his brother because "Plaintiff wanted more from his brother than the performance of these services. He wanted his brother's *personal* care and attention." *Id.* at 478 (emphasis added). Even though other people may have been qualified to provide care, Plaintiff illustrated that no one else's services would suffice. *Id.* The court also found that the contract was strictly personal to the obligee, the infirm brother, because it was exclusively for his enjoyment and produced no

benefits for his successors. *Id.*

In contrast, Louisiana courts have consistently held that commercial supply contracts are not strictly personal. In *Lomark, Inc. v. LavigneBaker Petroleum, L.L.C.*, the court held that a gasoline supply contract was not strictly personal. 12-389 (La. App. 5 Cir. 2/21/13), 110 So.3d 1107 (La. Ct. App. 2013); *see also In re Cajun Elec. Power Co-Op., Inc.*, 230 B.R. 693, 707 (Bankr. M.D. La. 1999) (characterizing a contract for the purchase and sale of electricity as "nothing more than commercial contracts between two sophisticated entities").

Here, the HVAC service contract was not strictly personal to either Xcel or Supreme Bright because it did not require a skill uniquely possessed by Xcel, nor was it intended for Supreme Bright's exclusive benefit. This service contract is not analogous to the contract with the artist for a portrait. Lacking these features of a strictly personal contract, the HVAC contract is most similar to the commercial supply contracts discussed in *Lomark* and *In Re Cajun*. Like a gasoline or electricity supply contract, which requires one particular service, the HVAC contract was for routine maintenance that could be performed by any number of qualified individuals. Unlike the plaintiff in *Bryan*, who set himself out as an expert in a very specific, complex field, Xcel is an air conditioning contracting company with many competitors offering identical services in the area. 128 So.3d at 1264; R. Doc. 24 at 1. Further, in *Bryan*, the expert plaintiff attempted to assign his rights and obligations to individuals that lacked equivalent qualifications. *Id.* In contrast, Xcel challenges the assignment of the contract from one obligee to another, rather than from one obligor to another.

Moreover, unlike the contract in *Victorian v. Victorian* which was strictly personal to both parties because it was intended for the exclusive benefit of an individual who specifically sought services from his brother alone, the HVAC contract in this case is a standard, commercial

contract. 411 So.2d at 478. The benefits of HVAC maintenance were not exclusively for the benefit of Supreme Bright, but rather were for the benefit of the building. Therefore, it makes sense that when the building was transferred, the parties would make arrangements to transfer the service contract rights to the subsequent buyers of the property who needed a functioning air conditioning system in order to operate the hotel.

      **b. Because the HVAC Service Contract Was Assignable, Plaintiff's Claims Are Not Barred By the Subsequent Purchaser Doctrine.**

The subsequent purchaser doctrine holds that "an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, *in the absence of an assignment* or subrogation of rights belonging to the owner of the property when the damage was inflicted." *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.* 2010-2267 (La. 10/25/11), 79 So.3d 246, 256-57 (La. 2011) (emphasis added). The doctrine imagines that damage to property injures an owner's real interest in that property, creating a personal right to sue the offending tortfeasor. *Guilbeau v. Hess Corporation*, 854 F.3d 310, 312 (5th Cir. 2017). This personal right is not transferable without an assignment or subrogation. *Id.*

Here, PHG is undeniably a subsequent purchaser of land. However, Plaintiff in this case claims to have an assignment of the HVAC contractual rights from PHG, who acquired the contractual rights via assignment from Supreme Bright. Xcel cites the subsequent purchaser rule in an attempt to illustrate that absent an assignment from PHG (which they contend was unavailable due to the strictly personal nature of the contract), Plaintiff, as a subsequent purchaser of the hotel, has no cause of action against it for damages caused prior to their ownership. R. Doc. 17-2 at 5. However, this argument is not persuasive because the contract is not strictly personal. Thus, if Plaintiff is the lawful assignee of rights from a subsequent

purchaser, it can pursue a claim against Xcel.

### c. Because Federal Rule of Civil Procedure 12(b)(6) Does Not Require the Introduction of Evidence, Plaintiff's Claims Do Not Fail Merely Because It Did Not Include Proof of the Contractual Assignment in the Pleadings.

To withstand a 12(b)(6) motion to dismiss, Plaintiff must merely "allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark.*, 632 F.3d at 152 (citing *Twombly*, 550 U.S. at 555). The standard does not require the demonstration of evidence. Rather, a motion to dismiss can only be granted if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A facially plausible claim is one that gives the court the opportunity to reasonably infer that the defendant engaged in the alleged misconduct. *Id.* The complaint need not, however, include precise evidence to support the allegations contained therein. These allegations must be considered in the light most favorable to the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the assertion that Plaintiff had an assignment of contractual rights is a factual allegation, not a legal conclusion. Therefore, when read on concert, Plaintiffs assertions in paragraphs 25-26 of the Amended Complaint (R. Doc. 23) that the service contract was assigned are sufficient to state a claim for breach of contract upon which relief may be granted.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Motions to Dismiss filed by Xcel Air Conditioning Services are hereby **DENIED**.

New Orleans, Louisiana, this 25 day of August, 2017.

_____
UNITED STATES DISTRICT JUDGE