UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COTTON EXCHANGE INVESTMENT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-17543** |
| **XCEL AIR CONDITIONING ET AL.** | |
| | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is Third Party Defendant Cosentini Associates, Inc.'s motion to Compel Arbitration and to Dismiss Third Party Plaintiff John T. Campo & Associates, Inc.'s Complaint against it, or Alternatively to Stay the Action Pending Arbitration. R. Doc. 111. John T. Campo & Associates, Inc. ("Campo") has filed an opposition. R. Doc. 120. Cosentini Associates, Inc. ("Cosentini") has filed a reply in support of its motion. R. Doc. 123. Having considered the parties' arguments and the applicable law, the Court is now ready to rule.

I. BACKGROUND

This case arises out of the claims of Plaintiff Cotton Exchange Investment Properties, LLC ("CEIP"), which alleges its hotel property was damaged by water and moisture exposure as a result of faulty renovations. R. Doc. 1 at 1; R. Doc. 88 ¶ 9. Plaintiff contends that in January 2014, Supreme Bright New Orleans LLC ("Supreme Bright"), which at the time owned the hotel, contracted with Xcel Air Conditioning Services, Inc. ("Xcel") to provide HVAC services, including the maintenance of the hotel's cooling tower, roof top units, and chilled water pumps. *Id.* at 3. That same month, Supreme Bright entered into a contract with Campo, whereby Campo would provide architectural, design, and engineering services. *Id.* at 4. A few months later,

Supreme Bright contracted with Commercial Renovation Services, Inc. ("CRS") to serve as general contractor for the project. *Id.* at 2.

In June 2015, Pacific Hospitality Group ("PHG") bought the hotel and assumed the rights to all three contracts. R. Doc. 1 at 3. PHG subsequently assigned its rights, title, and interest in the purchase to Plaintiff, including the contracts with Xcel, Campo, and CRS. R. Doc. 1 at 4. Plaintiff alleges Xcel's defective or faulty workmanship caused serious water/moisture damage to the hotel due to exposed chilled water piping, missing or improperly sealed insulation, and cracked or leaking draining pans. R. Doc. 23 at 7. Plaintiff alleges it had to close the hotel and incur damages from loss of use and repairs due to this extensive damage. R. Doc. 23 at 6. Based on these allegations, Plaintiff filed suit against Xcel, Campo, and CRS on December 16, 2016, bringing breach of contract and negligence claims against all three Defendants and breach of warranty of good workmanship claims against CRS and Campo. R. Doc. 23 at 7–16.[1]

On June 26, 2018, Campo filed a third-party demand against Cosentini alleging Cosentini provided the architectural plans for the hotel renovation and is therefore liable to defend and/or indemnify Campo for any claims arising from the use of Cosentini's architectural plans. R. Doc. 88. Campo alleges that on or about August 14, 2013, Cosentini submitted a proposal to Campo "to provide MEP/FP engineering design services" for the hotel's renovation (the "Proposal"). *Id.* at 2. Pursuant to the Proposal, Campo alleges that,

> [i]n the event that any party proves that the MEP/FP plans, drawings and/or specifications were inadequate or insufficient, or that any alleged damage was caused by the MEP /FP design and/or design services related to MEP/FP design, which is specifically denied, Cosentini is in breach of the Cosentini Proposal by failing to provide engineering services in accordance with the Cosentini Proposal and/or in accordance with the standard of care owed by a MEP/FP engineer in this locale.

---

[1] Plaintiff initially brought claims against Xcel and "Unidentified Parties" only, R. Doc. 1, but later amended its complaint on February 23, 2017 to include CRS and Campo, R. Doc. 23.

*Id.* at 4.

On October 10, 2018, Cosentini filed the instant motion seeking to compel arbitration pursuant to the terms of the Proposal as well as a motion to dismiss the third-party demand, or in the alternative, to stay the proceedings pending arbitration. R. Doc. 111.[2]

## II. PENDING MOTION

In its motion, Cosentini argues the Proposal's arbitration clause requires Campo to arbitrate the claims Campo brings against it. R. Doc. 111-1. In support of its motion, Cosentini points to the Proposal, which it attached to its motion, and contends that, because: (1) the arbitration agreement contained in the Proposal is valid and enforceable and (2) Campo's claims against it are subject to the arbitration agreement's provisions, the Federal Arbitration Act ("FAA") requires Campo's claims be resolved by arbitration. *Id.*

In opposition, Campo first argues that, because Cosentini's motion references matters outside of the pleadings, namely the Proposal, the Court must treat Cosentini's motion as one seeking summary judgment. R. Doc. 120 at 3. Second, Campo submits the Court should not consider the Proposal Cosentini attached to its motion, as "Cosentini failed to submit any affidavit authenticating the purported Cosentini Proposal as a true and correct copy of the agreement between the parties." *Id.* at 4. Finally, Campo contends the arbitration provision contained in the Proposal does not apply to a third-party's claims of professional negligence, such as CEIP's claims against Campo, which underlie Campo's third-party demand against Cosentini.

---

[2] CEIP and CRS filed a consent motion to stay CEIP's claims against CRS pending the completion of the arbitration proceeding between them, R. Doc. 44 at 1, which this Court granted on June 15, 2017, R. Doc. 45 at 1. The Court denied Defendant Xcel's motions to dismiss on August 25, 2017. R. Doc. 51.

## III. LAW & ANALYSIS

As an initial matter, the Court addresses Campo's threshold arguments that: (1) the Court may not consider the Proposal, and (2) if the Court does consider the Proposal, Cosentini's motion must be analyzed under the Rule 56 standard.

### A. Whether the Court may consider the Proposal

Courts in this Circuit "'do[] not require conclusive proof of authenticity' before allowing the admission of disputed evidence." *Nester v. Textron, Inc.*, 888 F.3d 151, 160 (5th Cir. 2018) (quoting *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989)). Rather, a proponent may authenticate the proffered document with "circumstantial evidence" of the item's "distinctive characteristics and the circumstances surrounding its discovery." *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993); *see also* Fed. R. Evid. 901(b)(4) (stating evidence may be authenticated through "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances"); *Nester*, 888 F.3d at 160 ("Rule 901(a)5 'merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be.'" (quoting *Jimenez Lopez*, 873 F.2d at 772)).

In this case, Campo's third-party claim against Cosentini makes several references to the Proposal, R. Doc. 88 ¶¶ 3, 4, 12, 13, and the allegations regarding the Proposal and the circumstances leading to the Proposal's execution match the proffered document's contents. For example, Campo alleges Cosentini submitted a Proposal on August 14, 2013 to Campo to provide MEP/FP engineering design services for a property located at 221 Carondelet St. in New Orleans, Louisiana. *Id.* ¶¶ 2, 3. Similarly, the proffered document is dated August 14, 2013, is addressed to Campo, and concerns MEP/FP engineering design services for a property located at 221

4

Carondelet St. in New Orleans, R. Doc. 111-2. Moreover, the bottom of the proffered document states it was accepted by Miriam Salas on behalf of John Campo on September 9, 2013 and bears Ms. Salas' signature. R. Doc. 111-2 at 11. Finally, Campo's "failure to offer any rebuttal to authenticity bolsters admission." *Nester*, 888 F.3d at 161; *see also McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998) (per curiam) (identifying opponent's failure to "claim that the document is not authentic" as one of several bases for authentication).

As a result, the Court finds it may properly consider the Proposal, as there is sufficient indicia of its authenticity.

### B. Whether consideration of the Proposal converts Cosentini's motion to one for summary judgment

Next, Campo argues the inclusion of the Proposal in Cosentini's motion to dismiss converts the motion to one for summary judgment. R. Doc. 120 at 3. Generally, in deciding a motion to dismiss for failure to state a claim, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(b). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

Because in this case Cosentini attached the Proposal to its motion to dismiss, Campo refers to the Proposal throughout its third-party complaint, and the Proposal is central to Campo's claims against Cosentini, the Court finds the inclusion of the Proposal does not convert Cosentini's motion to one for summary judgment. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773–74 (3d Cir. 2013) ("[W]here the affirmative defense of arbitrability of claims is

5

apparent on the face of a complaint (or . . . documents relied upon in the complaint) . . . the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC,* 832 F.Supp.2d 474, 481 (E.D. Pa. 2011))).

Having determined the Court may consider the Proposal in its analysis and that the motion is properly considered under the motion to dismiss standard, the Court turns to an analysis of the merits.

**C. Whether the FAA requires Campo to arbitrate its claims against Cosentini**

The "Terms and Conditions" section of the Proposal states: "In the event of any dispute, claim, question or controversy arising out of this agreement, its performance, interpretation and/or breach, the same will be determined by arbitration pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association." R. Doc. 111-2 at 10. In its motion, Cosentini argues this clause mandates arbitration of Campo's claims under the FAA, and asks that the proceeding against it be stayed pending arbitration. R. Doc. 111-1 at 1. In opposition to Cosentini's motion, Campo argues its dispute with Cosentini does not fall within the scope of the Proposal's arbitration clause, as the clause does not apply to third-party claims of professional negligence, which Campo contends underlie its claims against Cosentini. R. Doc. 120 at 4. Campo further argues outside legal constraints foreclose the arbitration of its claims. *Id.* at 6.

Pursuant to the FAA, a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act provides that any party "aggrieved by the . . . failure or refusal of another to arbitrate under a written agreement for

arbitration may petition any United States district court . . . for an order directing that such arbitration proceed." 9 U.S.C. § 4. "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." 9 U.S.C. § 3.

"[In enacting the FAA,] Congress declared a national policy favoring arbitration and withdrew the power of the state to require a judicial forum for the resolution of claims which the parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984). "[A]ny doubts concerning the scope of the arbitration issue should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 626 (1985) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *accord Pennzoil Exploration and Prod. Corp. v. Ramco Energy*, 139 F.3d 1061, 1067 (5th Cir. 1998) (stating that a court should "resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration" (internal citations omitted)).

Courts in the Fifth Circuit undergo a two-step inquiry to determine if an arbitration clause is subject to the FAA. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). First, courts consider whether the parties agreed to arbitrate. *Id.* Second, courts determine whether any legal constraints external to the agreement foreclose the arbitration of the disputed claims. *Id.*

1. **Whether the Proposal's arbitration provision applies to Campo's third-party demand against Cosentini**

Determining whether the parties agreed to arbitrate involves consideration of: (1) whether there was a valid agreement to arbitrate and (2) whether the dispute in question falls within the scope of the arbitration clause. *Id.* In this case, it is undisputed that the Proposal's arbitration

7

agreement is valid. Instead, Campo argues the provision does not include a third-party's claims of professional negligence.

In support of its argument, Campo points to *Chevron Phillips Chem. Co., L.P. v. Sulzer Chemtech USA, Inc.*, 02-598 (La. App. 5 Cir. 10/29/02); 831 So. 2d 474, 475 and *Dennis v. CMH Mfg., Inc.*, 1999-1626 (La. App. 3 Cir. 11/2/00); 773 So. 2d 818.

In *Chevron*, the parties entered into an agreement, pursuant to which the defendant would provide the plaintiff with labor, supervision, equipment, and materials to replace and revamp certain processing mechanisms in a recycling column. 831 So. 2d at 475. While the project was underway, a fire caused catastrophic damages to the column's styrene-distilling unit. *Id.* The plaintiff filed suit against the defendant, alleging the defendant's negligence caused the fire. The defendant sought to stay the proceedings pursuant to the parties' arbitration agreement. *Id.* The clause at issue stated, "Any dispute to be adjudicated between the parties hereto concerning the scope or interpretation of this Agreement, shall be submitted to arbitration." *Id* at 477. The trial court denied the defendant's motion to compel arbitration, concluding that the arbitration provision in the agreement addressed disputes related to the agreement only and not to claims sounding in tort. The Louisiana Fifth Circuit Court of Appeal affirmed, noting that the arbitration clause was narrowly confined to the "scope and interpretation of this Agreement," as evidenced by the clause's plain language. *Id.* at 477.

In *Dennis*, the plaintiffs bought a mobile home, which they alleged was defective causing personal injury damages. 773 So. 2d at 819. On remand from the Louisiana Supreme Court, the Third Circuit Court of Appeal determined the plaintiffs' redhibition claims were arbitrable but that their personal injury claims were not, as they were not claims based in contract. *Id.* at 821. In rendering its opinion, the court interpreted the Louisiana Arbitration Act—not the FAA at issue

8

here—stating, "The only disputes subject to arbitration under the provisions of La. R. S. 9:4201 are those 'arising out of the contract' or those disputes which exist between parties who agree to submit said disputes to arbitration which are 'existing between them at the time of the agreement to submit.'" *Id.* at 820–21.

Both *Chevron* and *Dennis* are readily distinguishable from the case at bar. Unlike the arbitration clause in *Chevron*, which limited arbitration to "the scope and interpretation of" the agreement, the arbitration clause at issue here is much more expansive, covering "*any* dispute, claim, question or controversy arising out of this agreement, *its performance*, interpretation and/or breach." R. Doc. 111-2 at 10 (emphasis added). Moreover, in *Dennis*, the court refused to refer the plaintiffs' tort claim to arbitration based on an interpretation of the Louisiana Arbitration Act, which is not the legal provision at issue in this case.

In this case, the arbitration clause provides that any dispute "arising out of" the agreement that cannot be resolved by the parties must be submitted to arbitration. R. Doc. 111–2 at 10. A dispute "arises out of or relates to" a contract if the legal claim underlying the dispute could not be maintained without reference to the contract. *Tittle v. Enron Corp.*, 463 F.3d 410, 422 (5th Cir. 2006). Contrastingly, a claim does not "arise out of or relate to" a contract if it is completely independent of the contract and could be maintained without reference to the contract. *Id.*

In its third-party complaint, Campo alleges that, "[*p*]*ursuant to the Cosentini Proposal*, Cosentini . . . is responsible . . . for any errors or omissions related to the MEP/FP design and/or the design services provided [by] Cosentini related to the MEP/FP design," "Cosentini is in *breach of the Cosentini Proposal* by failing to provide engineering services in accordance with the Cosentini Proposal and/or in accordance with the standard of care owed by a MEP/FP

9

engineer in this locale," and that "Cosentini is liable to defend and/or indemnify Campo for any and all damages awarded, *pursuant to Cosentini's contractual obligations* and/or legal duty under Louisiana law." R. Doc. 88 at ¶¶ 12–14 (emphasis added).

Although Campo contends its complaint should be viewed as asserting claims for professional negligence, such claims also arise out of alleged breaches of the Proposal and are therefore not independent of the contract. *See Tittle*, 463 F.3d at 422; *see also 84 Lumber Co. v. F.H. Paschen, S.N. Nielsen & Assocs., LLC*, No. 12-1748, 2013 WL 3872217, at *4 (E.D. La. July 24, 2013) (holding that plaintiffs' tort claims were subject to arbitration, as these claims arose out of alleged breaches of the contract). Parties to an arbitration agreement "cannot avoid [that agreement] by casting their claims in tort, rather than in contract." *Grigson v. Creative Artists Agency*, 210 F.3d 524, 526 (5th Cir. 2000) (citations omitted).

Moreover, any doubts about the arbitrability of a dispute should be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Aguillard v. Auction Mgmt. Corp.*, 04-2804, p. 20 (La. 6/29/05); 908 So. 2d 1, 18. To overcome this presumption, there must be clear evidence that the parties did not intend the claim to be arbitrable. *Harvey c. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000). In this case, the plain language of the Proposal's arbitration clause—"In the event of *any dispute*, . . . arising out of this agreement, [*or*] *its performance*, . . . will be determined by arbitration"—indicates the parties anticipated that any claim, including claims for professional negligence, would be subject to arbitration. Campo has offered no evidence that the parties did not so intend. "[A]rbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Pennzoil*, 139 F.3d at 1067 (internal citations omitted).

Because in this case Campo's claims for professional negligence arise out of its contractual relationship with Cosentini, and there is no clear indication this claim is not covered by the parties' arbitration agreement, the Court concludes Campo's claims against Cosentini are subject to arbitration.

2. **Whether any legal constraints external to the agreement foreclose the arbitration of Campo's claims**

Finally, Campo argues "legal constraints external to the parties' agreement foreclose[] the arbitration of those claims," as Campo "will clearly suffer prejudice if forced to arbitrate its claims against Cosentini outside of this litigation." R. Doc. 120 at 6.

In *Texaco Exploration & Production Co. v. AmClyde Engineered Products, Co.*, 243 F.3d 906 (5th Cir. 2001), the Fifth Circuit explained, "The FAA's purpose . . . is to enforce private arbitration agreements 'even if the result is "piecemeal litigation," at least absent a countervailing policy manifested in another federal statute.'" *Id.* at 910 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985)). Thus, "[t]o the extent permitting the claim for indemnity to go forward in arbitration will produce duplication of effort, redundant testimony, and the possibility of inconsistent findings . . . these are the risks that parties to an arbitration clause must be considered to have contemplated at the time they struck their bargain." *Tai Ping Insurance Co., Ltd. v. M/V Warshau*, 731 F.2d 1141, 1145 (5th Cir. 1984) (internal quotations omitted). Accordingly, the Court finds no legal constraints external to the parties' agreement foreclose the arbitration of Campo's claims against Cosentini.

D. **Whether the Court should dismiss or stay the action**

Finally, in its motion, Cosentini asks the Court to either: (1) compel arbitration and dismiss Campo's claims, or (2) stay the case pending arbitration. As the Fifth Circuit has observed, Section

11

3 of the FAA is mandatory, providing that federal courts "shall on application of one of the parties stay the trial of the action." *Waste Mgmt, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342–43, 346 (5th Cir. 2004). That is, when a court finds one or more issues between parties are referable to arbitration pursuant to a valid arbitration agreement, the FAA requires the Court to stay the action until the arbitration is complete. *See Bloxom v. Landmark Pub. Corp.*, 184 F. Supp. 2d 578, 585 (E.D. Tex. 2002).

Thus, pursuant to Section 3 of the FAA, the Court will stay Campo's third-party demand against Cosentini pending the outcome of arbitration. *See Tai Ping Ins. Co.*, 731 F.2d at 1144 n.2 (noting that the district court properly granted a "section 3 motion for a stay of litigation of the cross-claim pending its arbitration"). However, the Court will deny the motion to the extent Cosentini alternatively requests dismissal of the third-party claim. *See Murillo v. Coryell County Tradesmen, LLC*, No. 15-3641, 2017 WL 1155166, at *11 (E.D. La. Mar. 28, 2017).

3. **CONCLUSION**

The arbitration clause in the Proposal is sufficiently broad to include Campo's claims against Cosentini and no outside considerations prevent the claims from being referred to arbitration. Accordingly,

**IT IS ORDERED** that the motion be **GRANTED** in part and **DENIED** in part. The Court hereby **STAYS** Campo's claims against Cosentini pending arbitration. To the extent Consentini seeks dismissal of Campo's claims, the motion is **DENIED.**

New Orleans, Louisiana on this 7th day of November 2018.

_____
Eldon E. Fallon
United States District Judge