# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COTTON EXCHANGE INVESTMENT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-17543** |
| **XCEL AIR CONDITIONING ET AL.** | |
| | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is a motion to dismiss filed by Defendant Commercial Renovation Services, Inc. ("CRS"). R. Doc. 156. The Motion is opposed. R. Doc. 166. CRS has filed a reply. R. Doc. 176. The Court having heard oral argument on the motion on April 22, 2019, R. Doc. 179, rules as follows.

### I. BACKGROUND

Plaintiff Cotton Exchange Investment Properties LLC ("Cotton Exchange") alleges its hotel property was damaged by water and moisture exposure caused by Defendants CRS and John T. Campo & Associates ("Campo") during the hotel's renovation. R. Doc. 23 at 2. Plaintiff further contends the hotel sustained damages as a result of defective maintenance and repairs to the hotel's HVAC system performed by Defendant Xcel Air Conditioning Services, Inc. ("Xcel").

Plaintiff alleges that in 2014, Supreme Bright New Orleans LLC ("Supreme Bright") owned the Cotton Exchange Building in downtown New Orleans and executed several contracts for its renovation. R. Doc. 23 at 2. In January 2014, Supreme Bright contracted with Xcel to provide HVAC services, including the maintenance of the hotel's cooling tower, roof top units, and chilled water pumps. R. Doc. 1 at 3. That same month, Supreme Bright entered into a contract

1

with Campo, whereby Campo would provide architectural, design, and engineering services. R. Doc. 23 at 4. A few months later, Supreme Bright contracted with CRS to serve as general contractor for the project (the "Construction Contract"). R. Doc. 23 at 2. In June 2015, the hotel was bought by Pacific Hospitality Group ("PHG"), who assumed the rights to all three contracts. R. Doc. 1 at 3. PHG subsequently assigned all of its rights, title, and interest in the purchase to Plaintiff, including the contracts with Xcel, Campo, and CRS. R. Doc. 1 at 4. Plaintiff alleges that under the terms of their respective contracts, all three defendants agreed to indemnify Cotton Exchange for any property damage caused by negligent acts or omissions related to the scope of their work. R. Doc. 1 at 5; R. Doc. 23 at 3–4.

Plaintiff alleges the hotel suffered serious moisture damage as a result of Defendants' faulty workmanship, including water damaged walls and floors due to exposed chilled water piping, missing or improperly sealed insulation, and cracked or leaking draining pans. R. Doc. 23 at 7. Plaintiff alleges it had to close the hotel due to this extensive damage. R. Doc. 23 at 6. Plaintiff canceled the HVAC contract pursuant to its terms in December 2015 and notified Xcel of the damage on three occasions. R. Doc. 1 at 5, 6. Xcel did not respond to the demand for indemnity. R. Doc. 1 at 6. Additionally, Plaintiff avers it demanded indemnity from CRS and Campo, but was unsuccessful in these demands. R. Doc. 23 at 7. As a consequence, Plaintiff filed suit on December 16, 2016 bringing breach of contract and negligence claims against all three Defendants and breach of warranty of good workmanship claims against CRS and Campo. R. Doc. 23 at 7–16.[1]

On June 25, 2018, Campo filed a third-party complaint against Cosentini Associates, Inc. ("Cosentini"), alleging that "on or about August 14, 2013, Cosentini submitted a proposal to Campo 'to provide MEP/FP engineering design services' for the [hotel renovation] project." R.

---

[1] Defendants Campo and CRS were added on February 23, 2017 in Plaintiff's amended complaint. R. Doc. 23.

Doc. 88 at ¶ 3. Campo further contends that, because "Cosentiti was responsible for providing MEP/FP engineering design services for the project, . . . Cosentini, not Campo, is responsible, to the extent any exist, which is disputed, for any error or omissions related to the MEP/FP design and/or the design services provided [by] Cosentini related to the MEP/FP design." *Id.* at ¶ 12.

Plaintiff and Defendant CRS filed a consent motion to stay proceedings against CRS pending the completion of arbitration, R. Doc. 44 at 1, which the Court granted on June 14, 2017, R. Doc. 45 at 1. The Court denied Defendant Xcel's motions to dismiss in August 2017. R. Doc. 51. On October 10, 2018, Cosentini filed a motion seeking to compel arbitration of Campo's claims against it, R. Doc. 111, which the Court granted on November 8, 2018, R. Doc. 127. On November 9, 2018, the Court severed Campo's third-party complaint against Cosentini from the main action. R. Doc. 134.

## II. PRESENT MOTION

On March 21, 2019, CRS filed a motion seeking leave to lift the stay in order to file a motion to dismiss Plaintiff's claims against it. R. Doc. 152. On March 22, 2019, the Court granted the motion, lifting the stay solely to consider the merits of CRS's motion, R. Doc. 155, and the motion was filed into the record, R. Doc. 156. In their motion, CRS argues that, pursuant to the Louisiana Supreme Court's holding in *Eagle Pipe v. Amerada Hess Corp.*, Cotton Exchange has no right of action against CRS in either contract or tort. R. Doc. 156 at 1. Because "[t]he various documents effecting and related to the sale of the property at issue in this case did not contain a valid assignment of the personal right to sue [CRS] for alleged defects related to a renovation of the property by CRS prior to the sale," CRS moves the Court to vacate Cotton Exchange's arbitration demand and dismiss with prejudice all of Cotton Exchange's claims against CRS. *Id.* at 1–2.

3

In opposition, pointing to the fact that CRS and Cotton Exchange have been engaged in arbitration for nearly two years and that the arbitration hearing is scheduled to begin on December 2, 2019, Cotton Exchange argues this Court should refer CRS's motion to the arbitration panel. R. Doc. 166 at 1, 6–7. Alternatively, Cotton Exchange argues that, in the event the Court reaches the merits of CLS's motion, the motion should be denied, since the act of sale transferring ownership of the hotel from Supreme Bright to Cotton Exchange included the transfer of Supreme Bright's personal right to sue, and, even if the assignments did not contain a valid transfer of this right, the settlement reached between Supreme Bright and Cotton Exchange specifically and unequivocally contained a valid, retroactive assignment thereof. *Id.* at 2.

In reply, CRS reiterates its argument that the fact that Cotton Exchange entered into an amended sales contract is irrelevant, given that the right to sue for damages "is a personal right that must be specifically assigned *at the time of sale*." *LeJeune Bros. v. Goodrich Petroleum Co., L.L.C.*, 981 So. 2d 23, 31 (La. Ct. App. 3 Cir. 11/28/07) (emphasis added). As a result, CRS argues, because Cotton Exchange did not obtain the personal right to sue at the time of sale, "[Cotton Exchange] cannot avail itself of the provisions [of the Construction Contract], including the arbitration clause." R. Doc. 176 at 1–3.

## III.  LAW & ANALYSIS

The Court first considers the threshold issue of whether CLS's motion must be referred to the arbitration panel before turning the merits of the CRS motion.

### a.  Whether CLS's Motion Must be Referred to the Arbitrator

In *Rent-A-Center, W., Inc. v. Jackson*, the U.S. Supreme Court explained,

> There are two types of validity challenges under §2 [of the FAA]: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the

4

> illegality of one of the contract's provisions renders the whole contract invalid." . . . [Section] 2 states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable and enforceable" without mention of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract,"

561 U.S. 63, 70–71 (2010). Relatedly, in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, the U.S. Supreme Court held that, "[t]he [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." 139 S. Ct. 524, 528 (2019).

In this case, Section 21.4 of the Construction Contract provides that any claim between the parties not resolved by mediation "shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association, in accordance with the Construction Industry Arbitration Rules [the 'AAA Rules'] in effect on the date of this Agreement." R. Doc. 23-1 at § 21.4. Rule R-9 of the AAA Rules requires issues of arbitrability be referred to the arbitrator.

Neither party disputes the validity of the arbitration clause contained in the Construction Contract, and CRS does not suggest Cotton Exchange did not assume at least *some* of the rights and obligations contained therein. Moreover, CRS also does not argue Supreme Bright, had it not sold the property, would not have the ability to sue for property damage pursuant to the terms of the Construction Contract. Rather, CRS contends Cotton Exchange never obtained from Supreme Bright the personal right to sue for pre-sale property damage. Thus, unlike the situation in in *Rent-A-Center*, CRS does not challenge the validity of the Construction Contract itself, nor does it challenge the validity of the assignments—CRS questions what rights those assignments encompassed. Accordingly, whether Cotton Exchange assumed all the rights and obligations

5

Supreme Bright had at the time Supreme Bright and CRS entered into the contract does not require the Court to look at the Construction Contract itself—it requires the Court to look at the subsequent assignments of Supreme Bright's rights.

Although it is clear the arbitrator has authority over the Construction Contract, the same cannot be said for the subsequent assignments of the Contract. As a result, the Court finds it must rule on the merits of CRS's claims and consider whether Supreme Bright transferred its personal right to sue CRS for property damage allegedly sustained prior to the sale to Cotton Exchange by evaluating what rights those assignments conferred.

### b. Whether CLS's Motion Should be Considered Under the Rule 12 or Rule 56 Standard

Before proceeding to the merits of CRS's argument, the Court first considers Cotton Exchange's contention that CRS's motion be evaluated under the Rule 56 standard, as in its motion, CRS references contractual language that is neither contained in the complaint nor central to Cotton Exchange's claims.

In considering a motion to dismiss for failure to state a claim, typically a court must limit itself to the four corners of the pleadings, including its attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Court may consider uncontested documents referred to in the pleadings without converting the motion to one for summary judgment, even when the documents are not physically attached to the complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (stating the district court properly considered documents not attached to the complaint in ruling on a Rule 12(c) motion).

In this case, CRS moves the Court to dismiss Cotton Exchange's claims against it based on its contention that Cotton Exchange never acquired the right to bring claims against CRS for alleged property damage sustained before Cotton Exchange acquired ownership of the hotel. In support of its argument, CRS points to several contracts, the substantial majority of which were neither referenced in nor attached to Cotton Exchange's complaint. Although proof that Cotton Exchange acquired the right to sue CRS is central to Cotton Exchange's claims against CRS, assessing this issue requires the Court to look beyond the Construction Contract held between Supreme Bright and CRS, which Cotton Exchange attached to its amended complaint, and the assignment of Supreme Bright's rights to PHG and the subsequent assignment of PHG's rights to Cotton Exchange, which Cotton Exchange references in its complaint.[2] Thus, the Court must consider CRS's motion under the motion for summary judgment standard. Accordingly, pursuant to Federal Rule of Civil Procedure 12(d), the Court will allow the parties to supplement their pleadings "to present all the material that is pertinent to the motion."

IV. **CONCLUSION**

Pursuant to Federal Rule of Civil Procedure 12(d),

**IT IS ORDERED** that Defendant Commercial Renovation Services, Inc. supplement its motion and Plaintiff Cotton Exchange supplement its opposition to present all the material that is pertinent to the CRS motion by no later than Monday, May 6, 2019.

---

[2] In its opposition, Cotton Exchange states "the [Purchase and Sale Agreement] was not attached or referred to in the Amended Complaint." R. Doc. 166 at 4 n.5. In the amended complaint, however, Cotton Exchange states, "On or about June 2, 2015, Pacific Hospitality Group Ventures, Inc. ("PHG") and Supreme Bright entered into a purchase and Sale Agreement ("Purchase Agreement"), wherein PHG agreed to purchase the Hotel." R. Doc. 23 at ¶ 24; *see also* R. Doc. 166 at 6 ("The Amended Complaint referred to but did not attach the PSA."). Similarly, Cotton Exchange references the Assignment and Assumption of Purchase and Sale Agreement, in which PHG assigned its rights and obligations under the PSA to Cotton Exchange. R. Doc. 23 at ¶ 26; *see also* R. Doc. 166 at 4 n.4 ("PHG thereafter assigned its rights and obligation under the PSA to [Cotton Exchange].").

New Orleans, Louisiana on this 1st day of May, 2019.

_____
Eldon E. Fallon
U.S. District Court Judge