# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COTTON EXCHANGE INVESTMENT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-17543** |
| **XCEL AIR CONDITIONING ET AL.** | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by Defendant John T. Campo & Associates ("Campo"). R. Doc. 162. The Motion is opposed. R. Doc. 169. Campo has filed a reply. R. Doc. 178. The Court having heard oral argument on the motion on April 22, 2019, R. Doc. 179, rules as follows.

### I. BACKGROUND

Plaintiff Cotton Exchange Investment Properties LLC ("Cotton Exchange") alleges its hotel was damaged as a result of faulty workmanship performed by Defendants Commercial Renovation Services, Inc. ("CRS") and Campo during the hotel's renovation. R. Doc. 23 at 2. Plaintiff further contends the hotel also sustained damages as a result of defective maintenance and repairs to the hotel's HVAC system performed by Defendant Xcel Air Conditioning Services, Inc. ("Xcel"). In the present suit, Cotton Exchange seeks recovery for its damages.

In its complaint, Plaintiff alleges that in 2014, Supreme Bright New Orleans LLC ("Supreme Bright"), which owned the hotel at the time, executed several contracts for its renovation. R. Doc. 23 at 2. In January 2014, Supreme Bright contracted with Xcel to provide HVAC services, including the maintenance of the hotel's cooling tower, roof top units, and chilled

1

water pumps. R. Doc. 1 at 3. That same month, Supreme Bright entered into a contract with Campo (the "Architectural Agreement"), whereby Campo would provide architectural, design, and engineering services. R. Doc. 23 at 4. A few months later, Supreme Bright contracted with CRS to serve as general contractor for the project. R. Doc. 23 at 2. In June 2015, the hotel was bought by Pacific Hospitality Group ("PHG"), who assumed the rights to all three contracts. R. Doc. 1 at 3. PHG subsequently assigned all of its rights, title, and interest in the purchase to Plaintiff, including the contracts with Xcel, Campo, and CRS. R. Doc. 1 at 4. Plaintiff alleges that under the terms of their respective contracts, Cotton Exchange was indemnified by all three Defendants for any property damage caused by their negligent acts or omissions related to the scope of their work. R. Doc. 1 at 5; R. Doc. 23 at 3–4.

According to Cotton Exchange, the hotel suffered serious moisture damage as a result of Defendants' faulty workmanship, including water damaged walls and floors due to exposed chilled water piping, missing or improperly sealed insulation, and cracked or leaking draining pans. R. Doc. 23 at 7. Plaintiff claims it had to close the hotel due to this extensive damage. R. Doc. 23 at 6. Plaintiff canceled the HVAC contract pursuant to its terms in December 2015 and notified Xcel of the damage on three occasions. R. Doc. 1 at 5, 6. Xcel did not respond to the demand for indemnity. R. Doc. 1 at 6. Additionally, Plaintiff avers it demanded indemnity from CRS and Campo, but was also unsuccessful in these demands. R. Doc. 23 at 7. As a consequence, Plaintiff filed suit on December 16, 2016, bringing breach of contract and negligence claims against all three Defendants and breach of warranty of good workmanship claims against CRS and Campo. R. Doc. 23 at 7–16.[1]

On June 25, 2018, Campo filed a third-party complaint against Cosentini Associates, Inc.

---

[1] Defendants Campo and CRS were added on February 23, 2017 in Plaintiff's amended complaint. R. Doc. 23.

("Cosentini"), alleging that "on or about August 14, 2013, Cosentini submitted a proposal to Campo 'to provide MEP/FP engineering design services' for the [hotel renovation] project." R. Doc. 88 at ¶ 3. Campo further contends that, because "Cosentiti was responsible for providing MEP/FP engineering design services for the project, . . . Cosentini, not Campo, is responsible, to the extent any exist, which is disputed, for any error or omissions related to the MEP/FP design and/or the design services provided [by] Cosentini related to the MEP/FP design." *Id.* at ¶ 12.

Plaintiff and Defendant CRS filed a consent motion to stay proceedings against CRS pending the completion of arbitration, R. Doc. 44 at 1, which the Court granted on June 14, 2017, R. Doc. 45 at 1. The Court denied Defendant Xcel's motions to dismiss in August 2017. R. Doc. 51. On October 10, 2018, Cosentini filed a motion seeking to compel arbitration of Campo's claims against it, R. Doc. 111, which the Court granted on November 8, 2018, R. Doc. 127. On November 9, 2018, the Court severed Campo's third-party complaint against Cosentini from the main action. R. Doc. 134.

## II. PRESENT MOTION

In the instant motion, Campo contends Cotton Exchange lacks standing to assert any contract claims arising under the Architectural Agreement against Campo, as Cotton Exchange was never validly assigned any rights to the Agreement. R. Doc. 162-1 at 10. Thus, because there is no privity of contract between Cotton Exchange and Campo, Campo argues Cotton Exchange has no cause of action for breach of contract or breach of the warranty of good workmanship. *Id.* First, Campo contends the sale and assignment of rights from Supreme Bright to PHG and subsequently to Cotton Exchange did not include the Architectural Agreement held between Campo and Supreme Bright. According to Campo, for the contract to have been included as an assigned operating agreement transferred from Supreme Bright to PHG under Section 2.1.8 of the

purchase agreement, the Architectural Agreement "had to either (1) be assumed by PHG pursuant to the terms of an Assignment and Assumption Agreement or (2) listed as an Assumed Contract in Schedule 2.1.8 to the PHG Purchase Agreement," but that the Architectural Agreement was not assigned under either option. *Id.* at 15. Further, Campo submits PHG did not assume the rights to the Agreement pursuant to section 2.1.14, because that section requires Supreme Bright to provide copies of the Architectural Agreement to PHG, which Supreme Bright did not do. *Id.* at 15–16. Finally, Campo argues Supreme Bright did not confer Cotton Exchange rights in the Architectural Agreement directly. *Id.* at 16.

Next, Campo contends the contract it held with Supreme Bright contained language requiring Supreme Bright to obtain Campo's consent before assigning Supreme Bright's rights to a third party, and that, because Cotton Exchange "has no evidence that Campo provided written consent to any assignment of rights in the Architectural Agreement, [Cotton Exchange] cannot prove that it is an assignee to the Architectural Agreement." *Id.* at 13. Thus, even if subsequent amendments to the sales contract between Supreme Bright and Cotton Exchange were made to include the Agreement, which Campo denies, these amendments did not cure Supreme Bright's failure to obtain Campo's consent for the assignment, as the Architectural Agreement requires. *Id.* at 17.

With respect to Cotton Exchange's breach of warranty claims, Campo argues, even if the Agreement were validly transferred to Cotton Exchange, Campo made no express warranty and, therefore, Cotton Exchange "cannot assert a breach of warranty of good workmanship claim against Campo for any express warranty." *Id.* at 18. Moreover, Campo argues Cotton Exchange cannot bring breach of warranty claims pursuant to any implied warranties, as "the implied warranty of good workmanship is only implied from a *building contract*," not a contract for

4

professional services, such as the Architectural Agreement. *Id.* at 18–19. Finally, Campo contends that, even if the Architectural Agreement includes an implied warranty, "the warranty of good workmanship implied in a building contract is also not automatically transferred to the subsequent purchaser of immovable property." *Id.* at 19.

Additionally, Campo moves for summary judgment on Cotton Exchange's negligence claims against it, as it avers Supreme Bright never conveyed a personal right to sue to either PHG or Cotton Exchange. *Id.* at 20. Because the right to sue for damage sustained to property before a sale is a personal right of the person or entity who owned the property at the time the damage was inflicted, and personal rights of the former owner do not pass with the property in an act of sale in the absence of an express and specific assignment of that right to the buyer, Campo contends Cotton Exchange has no right to sue it for any property damage inflicted before the act of sale to Cotton Exchange.

In opposition, Cotton Exchange argues that, under the terms of the Purchase and Sale Agreement entered into between Supreme Bright at PHG, "the property to be transferred to PHG included (i) in Section 2.1.12 '[a]ll warranties and guaranties held by or made for the benefit of Seller with respect to the Improvements (defined by Section 2.1.1 to include "all buildings, structures (surface and subsurface), parking areas and other improvements . . . which constitute real property under [Louisiana law]), and (ii) in Section 2.1.14 'Intangible Property,' which was defined to include 'warranties and guaranties relating to the Property.'" R. Doc. 169 at 2.

With respect to whether the sale and assignment of rights from Supreme Bright to PHG and subsequently to Cotton Exchange included the Architectural Agreement held between Campo and Supreme Bright, Cotton Exchange contends that, by acquiring the right to sue those with whom Supreme Bright contracted for hotel renovation services, it was not necessary that the assignment

specifically reference Campo. *Id.* at 11.

Addressing Campo's argument that it is entitled to summary judgment on Cotton Exchange's warranty of good workmanship claims, Cotton Exchange argues Campo's argument that the warranty of good workmanship does not apply in the architectural context "directly defies Louisiana law," pointing to Louisiana Civil Code article 2762, which provides, "If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss." R. Doc. 169 at 6. Pointing to Article 2 of the PSA, Cotton Exchange argues Supreme Bright did assign to Cotton Exchange the right to enforce warranty claims arising out of the renovation project. Thus, Cotton Exchange contends Campo is not entitled to summary judgment on this claim.

Finally, Cotton Exchange contends it did obtain the personal right to sue Campo for property damage sustained to the hotel prior to the August 18, 2015 sale to Cotton Exchange. It points to the clause in the sales contract in which Supreme Bright assigned the right to bring "all known and unknown claims for damages arising out of the environmental conditions of the property." *Id.* at 9 (citing R. Doc. 166-1 at 6). It also points to the Settlement Agreement reached between Cotton Exchange and Supreme Bright, where in Supreme Bright "assign[ed], transfer[ed], and convey[ed] to [Cotton Exchange] all of [Supreme Bright]'s rights, title[s], and interest[s] in and to the [hotel], including all contractual and personal rights." *Id.* at 10. Moreover, Cotton Exchange submits architects owe a duty of care to subsequent owners of proper under Louisiana law and therefore contends Cotton Exchange has standing to sue Campo for negligence even if the sales contract did not include an assignment of the personal right to sue. *Id.* at 9.

### III. LAW & ANALYSIS

### a. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### b. Analysis

The Court first considers the issue of whether Cotton Exchange acquired the rights to the Architectural Agreement from Supreme Bright. In its motion, Campo points to language in the Agreement requiring Supreme Bright to first obtain Campo's explicit consent to assign the Agreement before conveying it to a third party. Specifically, Section 10.3 of the Architectural Agreement states:

> The Owner [Supreme Bright] and Architect [Campo], respectively, bind themselves, their agents, successors, assigns and legal representatives to this Agreement. Neither the Owner nor the Architect shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to a lender providing financing to the Project if the lender agrees to assume the Owner's rights and obligations under this Agreement.

R. Doc. 162-5. In its statement of uncontested material facts, Campo states, "Supreme did not obtain written consent from Campo in order to be able to transfer the Architectural Agreement to [Cotton Exchange]." R. Doc. 162-4 at ¶ 33. In its response to this statement, Cotton Exchange responds by stating the fact is "Undisputed, but . . . immaterial to the disposition of Campo's motion for summary judgment." R. Doc. 169-1 at ¶ 33. Cotton Exchange does not otherwise address this argument in its opposition, apparently conceding that it did not acquire the rights to the Architectural Agreement. Accordingly, the Court will grant Campo summary judgment on Cotton Exchange's breach of contract claim.

Next, Campo argues Cotton Exchange's warranty of good workmanship must be dismissed, as it never made any express warranties, and there exists no implied warranty of good workmanship for architectural services. In opposition, Cotton Exchange argues the implied warranty of good workmanship does apply to architects, pointing to Louisiana Civil Code article 2762 and *Orleans Parish School Board v. Pittman Construction Co.*, 260 So. 2d 661, 666 (La. 1972). However, because the Court concludes Cotton Exchange never acquired the rights to the

Architectural Contract, the Court will dismiss Plaintiff's breach of warranty claims, as Cotton Exchange never acquired the right to enforce Campo's warranty.

Finally, the Court evaluates Campo's argument that it is entitled to summary judgment on Cotton Exchange's negligence claim. Having concluded Cotton Exchange never acquired the right to sue Campo based on the Architectural Agreement, the Court concludes Cotton Exchange never acquired the personal right to sue Campo for damage sustained to the hotel prior to its sale. In its opposition, however, Cotton Exchange argues that "[i]n any event, Campo owed [Cotton Exchange], as a subsequent purchaser of the Hotel, a duty of care," pointing to *Williams v. Wood*, 2017-1049 (La. App. 4 Cir. 10/31/2018); 258 So. 3d 834, 841, *writ denied*, 262 So. 3d 902 (La. 1/28/2019).

In *Williams*, the Louisiana Fourth Circuit held that a design professional owes a duty of care to subsequent owners of property, even when the professional and the subsequent owner are not in privity of contract. *Id.* at 841. As the *Williams* court explained, Louisiana law,

> recognizes the existence of a duty of care owed by design professionals to persons with whom the design professional does not have privity. In such a case, this Court has concluded that 'absent privity of contract a cause of action cannot be asserted based on breach of contract; however, this does not preclude asserting a claim for damages based on the wrongdoer's tort.'

*Id.* at 841 (quoting *MR Pittman Grp., LLC v. Plaquemines Par. Gov't*, 2015-0396, p. 5, n. 1 (La. App. 4 Cir. 12/2/15), 182 So. 3d 291, 294). Thus, "'where the damage sued for is not the defective work but is instead damage caused by the defective work, a tort action against the contractor is proper when the elements for delictual recovery are present.'" *Id.* (quoting *N. Clark, L.L.C. v. Chisesi*, 2016-0599, p. 10 (La. App. 4 Cir. 12/7/16), 206 So. 3d 1013, 1020 (internal citations omitted)).

In this case, Count Seven of the Amended Petition states "[Cotton Exchange] has suffered damages as a direct and proximate cause of Campo's negligent [planning, development, and design work]." Although the complaint chiefly alleges Cotton Exchange is entitled to relief based on Campo's allegedly defective design, the complaint nevertheless also alleges Campo's design caused the Hotel to sustain water and moisture damage that manifested during Cotton Exchange's ownership of the property. As a result, the Court will not dismiss Cotton Exchange's negligence claims, even though Supreme Bright never conveyed to Cotton Exchange its personal right to sue.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant John T. Campo & Associates' motion for summary judgment, R. Doc. 162, be and hereby is **GRANTED** in part and **DENIED** in part. With respect to Plaintiff Cotton Exchange Investment Properties LLC's breach of contract and breach of warranty claims, the motion is **GRANTED**. With respect to Plaintiff's negligence claims, the motion is **DENIED**.

New Orleans, Louisiana on this 3rd day of May, 2019.

Eldon E. Fallon
U.S. District Court Judge