UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COTTON EXCHANGE INVESTMENT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-17543** |
| **XCEL AIR CONDITIONING ET AL.** | |
| | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is a motion to dismiss filed by Defendant Commercial Renovation Services, Inc. ("CRS"). R. Doc. 156. The Motion is opposed. R. Doc. 166. CRS has filed a reply. R. Doc. 176. The Court heard oral argument on the motion on April 22, 2019. R. Doc. 179. On May 3, 2019, the Court ordered the parties to file additional briefing, R. Doc. 189, which the parties provided on May 6, 2019, R. Docs. 192, 193. The Court now rules as follows.

### I. BACKGROUND

Plaintiff Cotton Exchange Investment Properties LLC ("Cotton Exchange") alleges its hotel was damaged as a result of faulty workmanship performed by Defendants CRS and John T. Campo & Associates ("Campo") during the hotel's renovation. R. Doc. 23 at 2. Plaintiff further contends the hotel also sustained damages as a result of defective maintenance and repairs to the hotel's HVAC system performed by Defendant Xcel Air Conditioning Services, Inc. ("Xcel"). In the present suit, Cotton Exchange seeks recovery for its damages.

In its complaint, Plaintiff alleges that in 2014, Supreme Bright New Orleans LLC ("Supreme Bright"), which owned the hotel at the time, executed several contracts for its renovation. R. Doc. 23 at 2. In January 2014, Supreme Bright contracted with Xcel to provide HVAC services, including the maintenance of the hotel's cooling tower, roof top units, and chilled

1

water pumps. R. Doc. 1 at 3. That same month, Supreme Bright entered into a contract with Campo, whereby Campo would provide architectural, design, and engineering services. R. Doc. 23 at 4. A few months later, Supreme Bright contracted with CRS to serve as general contractor for the project (the "Construction Contract"). R. Doc. 23 at 2. In June 2015, the hotel was bought by Pacific Hospitality Group ("PHG"), who assumed the rights to all three contracts. R. Doc. 1 at 3. PHG subsequently assigned all of its rights, title, and interest in the purchase to Plaintiff, including the contracts with Xcel, Campo, and CRS. R. Doc. 1 at 4. Plaintiff alleges that under the terms of their respective contracts, Cotton Exchange was indemnified by all three Defendants for any property damage caused by their negligent acts or omissions related to the scope of their work. R. Doc. 1 at 5; R. Doc. 23 at 3–4.

According to Cotton Exchange, the hotel suffered serious moisture damage as a result of Defendants' faulty workmanship, including water damaged walls and floors due to exposed chilled water piping, missing or improperly sealed insulation, and cracked or leaking draining pans. R. Doc. 23 at 7. Plaintiff claims it had to close the hotel because of this extensive damage. R. Doc. 23 at 6. Plaintiff canceled the HVAC contract pursuant to its terms in December 2015 and notified Xcel of the damage on three occasions. R. Doc. 1 at 5, 6. Xcel did not respond to the demand for indemnity. R. Doc. 1 at 6. Additionally, Plaintiff avers it demanded indemnity from CRS and Campo, but was also unsuccessful in these demands. R. Doc. 23 at 7. As a consequence, Plaintiff filed suit on December 16, 2016, bringing breach of contract and negligence claims against all three Defendants and breach of warranty of good workmanship claims against CRS and Campo. R. Doc. 23 at 7–16.[1]

## II. PRESENT MOTION

---

[1] Defendants Campo and CRS were added on February 23, 2017 in Plaintiff's amended complaint. R. Doc. 23.

In their motion,[2] CRS challenges whether Cotton Exchange acquired from Supreme Bright the right to bring claims against CRS for damages CRS allegedly inflicted during Supreme Bright's ownership of the building. R. Doc. 156 at 1. CRS argues that, pursuant to the Louisiana Supreme Court's holding in *Eagle Pipe v. Amerada Hess Corp.*, Cotton Exchange has no right of action against CRS in either contract or tort. Because "[t]he various documents effecting and related to the sale of the property at issue in this case did not contain a valid assignment of the personal right to sue [CRS] for alleged defects related to a renovation of the property by CRS prior to the sale," CRS moves the Court to vacate Cotton Exchange's arbitration demand and dismiss with prejudice all of Cotton Exchange's claims against CRS. *Id.* at 1–2.

In opposition, Cotton Exchange argues CRS's motion should be denied, as the act of sale transferring ownership of the hotel from Supreme Bright to Cotton Exchange included the transfer of Supreme Bright's personal right to sue, and, even if the assignments did not contain a valid transfer of this right, the settlement reached between Supreme Bright and Cotton Exchange specifically and unequivocally contained a valid, retroactive assignment thereof. R. Doc. 166 at 2.

In reply, CRS reiterates its argument that the fact that Cotton Exchange entered into an amended sales contract is irrelevant, given that the right to sue for damages "is a personal right that must be specifically assigned *at the time of sale.*" *LeJeune Bros. v. Goodrich Petrol. Co., L.L.C.*, 2006-1557, p. 12 (La. App. 3 Cir. 11/28/07), 981 So. 2d 23, 31 (emphasis added). As a result, CRS argues, because Cotton Exchange did not obtain the personal right to sue at the time

---

[2] Plaintiff and CRS filed a consent motion to stay proceedings against CRS pending the completion of arbitration, R. Doc. 44 at 1, which the Court granted on June 14, 2017, R. Doc. 45 at 1. On March 21, 2019, CRS filed a motion seeking leave to lift the stay in order to file a motion to dismiss Plaintiff's claims against it. R. Doc. 152. On March 22, 2019, the Court granted the motion, lifting the stay solely to consider the merits of CRS's motion, R. Doc. 155, and the motion was filed into the record, R. Doc. 156.

of sale, "[Cotton Exchange] cannot avail itself of the provisions [of the Construction Contract], including the arbitration clause." R. Doc. 176 at 1–3.

### III. LAW & ANALYSIS

The CRS motion challenges whether Supreme Bright validly assigned to Cotton Exchange its personal right to sue CRS for breach of contract, breach of warranty, and negligence arising out of the Construction Contract and CRS's allegedly negligent execution thereof. For the reasons stated in the Court's previous order, R. Doc. 189, the Court considers this issue under the Rule 56 standard.

#### a. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

"[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### b. Analysis

Under Louisiana law, when property is damaged through the actions of another, the owner of the property obtains a personal right to demand that the tortfeasor repair the damage to the property. *See* LA. CIV. CODE art. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."). Stemming from this premise, the "subsequent purchaser rule," holds that a subsequent owner of property has no right of action against a third-party for damage the third-party inflicted prior to the subsequent owner's acquiring the property, absent an assignment or subrogation of the prior owner's personal right of action. *See Catahoula Lake Invests., LLC v. Hunt Oil Co.*, 2017-649, p. 2 (La. App. 3 Cir. 1/10/18), 237 So. 3d 585, 587. Essentially, because the damage was inflicted before the subsequent purchaser had any legal interest in the property, she did not sustain the injury, and therefore, has no personal right of action against the tortfeasor. *See Clark v. J.L. Warner & Co.*, 6 La. Ann. 408 (1851) ("[T]he reparation must be made to him who suffered the injury."). Thus, although "the purchaser of property is presumed to acquire all actions appurtenant to the property, and necessary to its perfect enjoyment, . . . as to damages actually suffered by the vendor before the sale, they are personal to him, and cannot be

recovered by the purchaser, without an express subrogation." *Payne v. James*, 7 So. 457, 458 (1890). This rule applies regardless of whether the damage is apparent at the time of sale. *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267, p. 8–10 (La. 10/25/11), 79 So. 3d 246, 256–57.

CRS and Supreme Bright entered into the Construction Contract in April 2014. R. Doc. 23-1. On June 2, 2015, Supreme Bright entered into a Purchase and Sale Agreement (the "PSA") with PHG, R. Doc. 156-3, whereby Supreme Bright "assign[ed] the Assumed Contracts, Licenses and Permits, Intellectual Property, Books and Records, Plans and Specifications, Warranties and Bookings to Purchaser on the terms set forth therein." R. Doc. 156-3. Thereafter, PHG assigned its rights to the PSA to Cotton Exchange, R. Doc. 156-5,[3] and Cotton Exchange executed the Act of Cash Sale with Supreme Bright on August 18, 2015, which transferred the legal title of the hotel to Cotton Exchange, R. Doc. 192-4. On the same day, August 18, 2015, Cotton Exchange and Supreme Bright also entered into an Assignment and Assumption Agreement. R. Doc. 192-5.

Although Cotton Exchange contends it obtained Supreme Bright's personal right to sue through these agreements, Cotton Exchange chiefly points to a Settlement and Release Agreement (the "Settlement Agreement") it and Supreme Bright executed on January 21, 2017.[4] R. Doc. 192-7. The Settlement Agreement included the following provision:

> Assignor hereby assigns, transfers and conveys all of Assignor's rights, title and interest in and to the Assigned Property, including all contractual and personal rights in and/or related to the Hotel, *including without limitation the personal right to sue for damages*, that Assignor has against CRS, subcontractors and vendors to CRS, and any other contractors or vendors engaged by SBNO prior to the Closing Date.

---

[3] Section 19.2 of the Construction Contract provides that "(a) the Owner may, without consent of the Contractor, assign the Contract" (i) "in whole or in part . . . to a party purchasing the property" and (ii) "in whole or in part to any person . . . after completion of the Work." R. Doc. 23-1 at 19.

[4] Cotton Exchange contends, and CRS does not deny, that the settlement agreement settled issues between Supreme Bright and Cotton Exchange not relevant to this instant matter.

*Id.* at 4–5 (emphasis added).

During oral argument of this matter, CRS conceded that, had this language been included in the original transfer of ownership from Supreme Bright to Cotton Exchange, there would be no question of Cotton Exchange's right to sue CRS on the Construction Contract. CRS takes the position, however, that pursuant to *Eagle Pipe*, the personal right to sue must be conferred at the time of sale and may not be assigned subsequently. According to CRS, Supreme Bright's personal rights in the property were extinguished once it sold the property, and it therefore lacked the ability to retroactively assign those rights to Cotton Exchange following the sale.

The position CRS takes—that Supreme Bright's personal rights were extinguished once it sold the property—is belied by the Louisiana Supreme Court's discussion in *Eagle Pipe* itself. As the Louisiana Supreme Court stated,

> The property owner at the time the damages were inflicted has a personal right of action against the tortfeasor for the disturbance of his real right in the property. When the damage is apparent, the property owner obtains the personal right of action to sue for damages to compensate for a loss of value in the property or an interference with the property's use. This personal right exists during his use and enjoyment while he owns the property. *This personal right exists even during and after his disposal of the property*, as it is assumed the apparent damage would result in a loss of value to the property which would be reflected in the sale price. . . . whether damage to the property is apparent or not, the personal nature of the right of the landowner at that time does not change, and remains with the landowner *unless the right is explicitly assigned or subrogated to another*.

79 So. 3d at 275–76 (emphasis added); *see also id.* at 264 ("*Clark* makes clear that the former property owners still have a personal right of action against a tortfeasor for the damage he inflicted on the property while they were the owners, despite the fact that they no longer own the property."). Assuming the contracts entered into at the time of sale did not assign to Cotton Exchange Supreme Bright's personal right to sue CRS, Supreme Bright retained its personal right to sue—contrary to CRS's argument, this right was not "extinguished" at the time of sale. The Court thus considers

7

whether this right can be transferred following the sale of the property.

In *Wagoner v. Chevron USA, Inc.*, the plaintiffs filed suit against various oil companies seeking to recover for damages allegedly inflicted by those companies prior to the plaintiffs' having acquired ownership of the property. 48, 119 (La. App. 2 Cir. 7/24/13), 121 So. 3d 727. Citing the subsequent purchaser rule, the district court granted the defendants' exception of no right of action, finding that "[n]one of the transfers of the surface interests in Plaintiffs' chain of title included a specific assignment of the right to sue for property damages," and the court of appeal affirmed. *Id.* at 730–31. Following the dismissal, the plaintiffs "obtained an assignment of 99% rights from the owners of the mineral servitudes (who were also successors of former surface owners) to seek recovery for damages to the property caused by oil exploration and production," and again filed suit against the defendants. *Id.* at 730. The district court dismissed the second action with prejudice, granting the exception of res judicata.

On appeal, the Second Circuit Court of Appeal reversed the district court's judgment, holding that the doctrine of res judicata did not bar subsequent suit, as the plaintiffs acquired from the prior owner the personal right to sue for the damage following dismissal thereby altering the capacity in which the plaintiffs appeared in the case. *Id.* at 733–34. As the Second Circuit explained,

> In *Wagoner I*, the Wagoners were barred by the subsequent purchaser rule from seeking damages for harm to the property occurring prior to their 2004 purchase. . . . [Thus,] [t]he rights of the servitude owners/lessors were not litigated . . . . Since the Pasternacks' claims were not previously litigated, neither *res judicata* nor *lis pendens* applies to the Wagoners' current claims arising from the Pasternacks' assignments. . . . In *Wagoner I*, the plaintiffs filed suit in their capacity as present surface owners who acquired the property in 2004. In *Wagoner II*, the plaintiffs are also suing in their capacity as assignees of the rights of the mineral servitude owners/lessors as well as prior surface owners.
>
> [Therefore,] *Wagoner I* and *Wagoner II* do not include the "same parties," because the Wagoners are appearing in a different capacity in *Wagoner II* than they did in *Wagoner I*. They could not have previously appeared in their current capacity, as they did not obtain the rights of the servitude owners/lessors until after the final

> judgment in *Wagoner I*. Because the second suit concerns the defendants' obligations to the mineral servitude owners/lessors, it follows that the second suit should not be precluded.

*Id.* at 733–35. Although not explicitly stated, a necessary implication of the Second Circuit's holding is that the personal right to sue may be assigned, even after the act of sale is executed. *See id.* at 732 ("Comment (d) of La. C.C. art. 476 . . . notes individuals have contractual freedom to create new real rights by dismembering their ownership as they see fit. An example of this dismemberment of ownership is the Pasternacks' transfer to the Wagoners of their rights to seek damages for oil activity contamination.").

Based on the Louisiana Supreme Court's holding in *Eagle Pipe* and the Second Circuit's analysis in *Wagoner II*, the Court concludes Supreme Bright retained its personal right to sue CRS after the sale and validly transferred this right to Cotton Exchange on January 31, 2017. As a result, the Court will deny CRS's motion and reinstate the stay of Cotton Exchange's claims against CRS, pending arbitration.

## IV. CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that the motion to dismiss filed by Defendant Commercial Renovation Services, Inc. be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Cotton Exchange Investment Properties LLC's claims against Defendant Commercial Renovation Services, Inc. be and hereby are **STAYED** pending the outcome of arbitration.

New Orleans, Louisiana on this 16th day of May, 2019.

_____
Eldon E. Fallon
U.S. District Court Judge