UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COTTON EXCHANGE INVESTMENT | CIVIL ACTION |
| VERSUS | NO. 16-17543 |
| XCEL AIR CONDITIONING ET AL. | SECTION "L" (5) |

**ORDER & REASONS**

Before the Court is a motion for summary judgment filed by Defendant Xcel Air Conditioning Services, Inc. ("Xcel"). R. Doc. 195. The Motion is opposed. R. Doc. 199. Xcel has filed a reply. R. Doc. 205. The Court now rules as follows.

I. **BACKGROUND**

Plaintiff Cotton Exchange Investment Properties LLC ("Cotton Exchange") alleges its hotel was damaged as a result of faulty workmanship performed by Defendants Commercial Renovation Services, Inc. ("CRS") and John T. Campo & Associates ("Campo") during the hotel's renovation. R. Doc. 23 at 2. Plaintiff further contends the hotel also sustained damages as a result of defective maintenance and repairs to the hotel's HVAC system performed by Defendant Xcel. In the present suit, Cotton Exchange seeks recovery for its damages.

In its complaint, Plaintiff alleges that in 2014, Supreme Bright New Orleans LLC ("Supreme Bright"), which owned the hotel at the time, executed several contracts for its renovation. R. Doc. 23 at 2. In January 2014, Supreme Bright contracted with Xcel to provide HVAC services, including the maintenance of the hotel's cooling tower, roof top units, and chilled water pumps. R. Doc. 1 at 3. That same month, Supreme Bright entered into a contract with Campo, whereby Campo would provide architectural, design, and engineering services. R. Doc. 23 at 4. A few months later, Supreme

1

Bright contracted with CRS to serve as general contractor for the project. R. Doc. 23 at 2.

In June 2015, Pacific Hospitality Group ("PHG") entered into a purchase agreement with Supreme Bright to buy the hotel whereby PHG would assume the rights to all three contracts. R. Doc. 1 at 3. PHG subsequently assigned all of its rights, title, and interest in the purchase to Cotton Exchange, including the contracts with Xcel, Campo, and CRS. Thereafter, Cotton Exchange executed the purchase agreement with Supreme Bright (the "Assignment and Assumption Agreement"). R. Doc. 1 at 4. On January 31, 2017, Cotton Exchange and Supreme Bright entered into a settlement agreement resolving a matter unrelated to the issue at bar, wherein the parties amended the Assignment and Assumption Agreement's terms by adding the following language:

> Assignor hereby assigns, transfers and conveys all of Assignor's rights, title and interest in and to the Assigned Property, including all contractual and personal rights in and/or related to the Hotel, including without limitation the personal right to sue for damages, that Assignor has against CRS, subcontractors and vendors to CRS, and any other contractors or vendors engaged by [Supreme Bright] prior to the Closing Date.

R. Doc. 199-8 at 4–5.

Cotton Exchange alleges that under the terms of their respective contracts, Cotton Exchange was indemnified by all three Defendants for any property damage caused by their negligent acts or omissions related to the scope of their work. R. Doc. 1 at 5; R. Doc. 23 at 3–4. According to Cotton Exchange, the hotel suffered serious moisture damage as a result of Defendants' faulty workmanship, including water damaged walls and floors due to exposed chilled water piping, missing or improperly sealed insulation, and cracked or leaking draining pans. R. Doc. 23 at 7. Plaintiff claims it had to close the hotel because of this extensive damage. R. Doc. 23 at 6. Plaintiff canceled the HVAC contract pursuant to its terms in December 2015 and notified Xcel of the damage on three occasions. R. Doc. 1 at 5, 6. Xcel did not respond to the demand for indemnity. R. Doc. 1 at 6. Additionally, Plaintiff avers it demanded indemnity from CRS and Campo, but was also

unsuccessful in these demands. R. Doc. 23 at 7. As a consequence, Plaintiff filed suit on December 16, 2016, bringing breach of contract and negligence claims against all three Defendants and breach of warranty of good workmanship claims against CRS and Campo. R. Doc. 23 at 7–16.[1]

On March 29, 2019, Defendant Campo filed a motion for summary judgement, R. Doc. 162, which the Court granted in part and denied in part, R. Doc. 190. With respect to Cotton Exchange's breach of contract and breach of warranty claims against Campo, summary judgement was granted because Campo and Supreme Bright's agreement contained language requiring Supreme Bright to obtain Campo's explicit consent before assigning their agreement to a third party. *Id.* at 8. However, with respect to Cotton Exchange's negligence claims against Campo, summary judgement was denied because part of Cotton Exchange's complaint alleges it sustained damage caused by Campo during its ownership of the property. *Id.* at 10.

On March 22, 2019, Defendant CRS filed a motion to dismiss contending Cotton Exchange had no right of action in contract or tort. R. Doc. 156. On May 16, 2019, the Court denied CRS's motion, holding Supreme Bright retained its personal right to sue CRS after the sale to Cotton Exchange and thus validly transferred this right to Cotton Exchange over a year after the sale pursuant to the Assignment and Assumption Agreement. R. Doc. 198.

## II. PRESENT MOTION

In the instant motion, Defendant Xcel contends Cotton Exchange was not assigned the personal right to sue Xcel under two separate Aaon Unit repair contracts (R. Doc. 195-5; R. Doc. 195-5) or a fan coil unit cleaning ("FCU") contract (R. Doc. 195-6). R. Doc. 195-1 at 2–3. According to Xcel, the Assignment and Assumption Agreement assigned the Preventative Maintenance

---

[1] Defendants Campo and CRS were added on February 23, 2017 in Plaintiff's amended complaint. R. Doc. 23.

Contract only.[2] *Id.* at 4. Furthermore, Xcel submits a lack of valid assignment warrants a dismissal of the claims related to the Aaon Unit and FCU contracts because a party not in privy to a contract cannot recover for its breach. *Id.* at 8. Additionally, Xcel argues the subsequent purchaser rule bars Cotton Exchange from recovering under the Aaon Unit and FCU contracts because "an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase." *Id.* at 8–9. Finally, Xcel points to this Court's order granting partial summary judgment in favor of Campo, arguing that order is controlling here.

In opposition, Cotton Exchange acknowledges it has not sued Xcel for its work under the two Aaon Unit repair contracts, and therefore, does not oppose summary judgment on those contracts. R. Doc.199 at 2. Next, Cotton Exchange argues the Settlement Agreement reached between Supreme Bright and Cotton Exchange on January 31, 2017 amended the Assignment and Assumption Agreement specifically assigning to Cotton Exchange Supreme Bright's personal right to sue on the FCU contract. *Id.* at 3. Thus, Cotton Exchange contends, Xcel's motion to dismiss Cotton Exchange's claims based on that contract should be denied. Lastly, Cotton Exchange avers the Court's ruling on Defendant Campo's motion for summary judgement is not applicable here, as Supreme Bright's contact with Campo contained language that required Campo's explicit consent before the contract could be assigned to a third party, a provision Xcel's contract does not contain. *Id.* at 5.

### III. LAW & ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*

---

[2] Notably, Xcel concedes that the Preventative Maintenance Contract (R. Doc. 195-7) was assigned to Cotton Exchange in the June 2, 2015 sale from Supreme Bright to Cotton Exchange. *Id.* at 2.

*v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

     **a. Analysis**

The Court notes at the outset that, with respect to the two Aaon contracts, Xcel's motion is unopposed. Thus, the Court will grant summary judgment in favor of Xcel with respect to those two contracts. As a result, the only remaining dispute before the Court is whether Cotton Exchange ever

obtained the personal right to sue Xcel under the FCU Contract.

As the Court held previously in this case, the Settlement Agreement reached between Supreme Bright and Cotton Exchange served as a valid transfer of Supreme Bright's personal right to sue "any other contractors or vendors engaged by [Supreme Bright] prior to the Closing Date." R. Doc. 198 at 7–9. Apparently requesting the Court reconsider that holding, Xcel now argues, as CRS did in its motion, that a party's personal right to sue must be transferred at the time of sale. The Court declines the invitation to come to a different conclusion and reiterates its prior finding that, "Based on the Louisiana Supreme Court's holding in *Eagle Pipe* and the Second Circuit's analysis in *Wagoner II*, . . . Supreme Bright retained its personal right to sue [Xcel] after the sale and validly transferred this right to Cotton Exchange on January 31, 2017." *Id.* at 9. As a result, the Court will deny Xcel's motion with respect to the FCU Contract.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Xcel's motion, R. Doc. 195, be **GRANTED** in part and **DENIED** in part. To the extent Xcel seeks summary judgment on the two Aaon Contracts, the motion is **GRANTED** as unopposed. For all other requests for relief, the motion is **DENIED**.

6/4/2019

*Eldon E Fallon*