UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COTTON EXCHANGE INVESTMENT | CIVIL ACTION |
| VERSUS | NO. 16-17543 |
| XCEL AIR CONDITIONING ET AL. | SECTION "L" (5) |

## ORDER & REASONS

Before the Court is a motion seeking reconsideration of the Court's partial denial of summary judgment filed by Defendant John T. Campo ("Campo"). R. Doc. 200. The motion is opposed. R. Doc. 209. Campo has filed a reply. R. Doc. 218. The Court now rules as follows.

### I. BACKGROUND

Plaintiff Cotton Exchange Investment Properties LLC ("Cotton Exchange") alleges its hotel was damaged as a result of faulty workmanship performed by Defendants Campo and Commercial Renovation Services, Inc. ("CRS") during the hotel's renovation. R. Doc. 23 at 2. Plaintiff contends the hotel also sustained damages as a result of defective maintenance and repairs to the hotel's HVAC system performed by Defendant Xcel Air Conditioning Services, Inc. ("Xcel").

In its complaint, Plaintiff alleges that in 2014, Supreme Bright New Orleans LLC ("Supreme Bright"), which owned the hotel at the time, executed several contracts for the hotel's renovation. *Id.* In January 2014, Supreme Bright contracted with Xcel to provide HVAC services, including the maintenance of the hotel's cooling tower, roof top units, and chilled water pumps. R. Doc. 1 at 3. That same month, Supreme Bright entered into a contract with Campo for Campo to provide architectural, design, and engineering services. R. Doc. 23 at 4. A few months later, Supreme Bright contracted with CRS to serve as general contractor for the project. R. Doc. 23 at 2.

In June 2015, Pacific Hospitality Group ("PHG") entered into a purchase agreement with

1

Supreme Bright to buy the hotel, whereby PHG would assume the rights to all three contracts. R. Doc. 1 at 3. PHG subsequently assigned all of its rights, title, and interest in the purchase to Cotton Exchange, including the contracts with Xcel, Campo, and CRS. Thereafter, Cotton Exchange executed the purchase agreement with Supreme Bright (the "Assignment and Assumption Agreement"). *Id.* at 4. On January 31, 2017, Cotton Exchange and Supreme Bright entered into a settlement agreement resolving a matter unrelated to the issue at bar, wherein the parties amended the Assignment and Assumption Agreement's terms by adding the following language:

> Assignor hereby assigns, transfers and conveys all of Assignor's rights, title and interest in and to the Assigned Property, including all contractual and personal rights in and/or related to the Hotel, including without limitation the personal right to sue for damages, that Assignor has against CRS, subcontractors and vendors to CRS, and any other contractors or vendors engaged by [Supreme Bright] prior to the Closing Date.

R. Doc. 199-8 at 4–5.

Cotton Exchange alleges that under the terms of their respective contracts, Cotton Exchange was indemnified by all three Defendants for any property damage caused by their negligent acts or omissions related to the scope of their work. R. Doc. 1 at 5; R. Doc. 23 at 3–4. According to Cotton Exchange, the hotel suffered serious moisture damage as a result of Defendants' faulty workmanship, including water-damaged walls and floors due to exposed chilled water piping, missing or improperly sealed insulation, and cracked or leaking draining pans. R. Doc. 23 at 7. Plaintiff claims it had to close the hotel because of this extensive damage. *Id.* at 6. In December 2015, Plaintiff alleges it canceled the HVAC contract with Xcel pursuant to its terms and notified Xcel of the damage on three occasions. R. Doc. 1 at 5, 6. Xcel allegedly did not respond to the demand for indemnity. *Id.* at 6. Additionally, Plaintiff avers it demanded indemnity from CRS and Campo, but was also unsuccessful in these demands. R. Doc. 23 at 7. As a consequence, Plaintiff filed suit on December 16, 2016, bringing breach of contract and negligence claims against all three Defendants and breach of warranty of good workmanship

claims against CRS and Campo. *Id.* at 7–16.[1]

On March 29, 2019, Defendant Campo filed a motion for summary judgment, R. Doc. 162, which the Court granted in part and denied in part, R. Doc. 190. With respect to Cotton Exchange's breach of contract and breach of warranty claims against Campo, the Court granted summary judgment because Campo and Supreme Bright's agreement contained language requiring Supreme Bright to obtain Campo's explicit consent before assigning their agreement to a third party. *Id.* at 8. With respect to Cotton Exchange's negligence claims against Campo, however, the Court denied summary judgment because Cotton Exchange's complaint alleges, in part, that the hotel sustained damage caused by Campo during Cotton Exchange's ownership of the property. *Id.* at 10.[2]

## II. PRESENT MOTION

In the instant motion, Campo seeks reconsideration of the Court's denial of summary judgment on Cotton Exchange's negligence claims against Campo. R. Doc. 200. Alternatively, Campo moves the Court to certify the issue for interlocutory appeal. *Id.* Campo argues this Court committed legal error in denying its motion with respect to Cotton Exchange's negligence claims, reiterating its argument that the subsequent purchaser rule bars these claims and again pointing to *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267 (La. 10/25/2011), 79 So. 3d 246. R. Doc. 200 at 3.

In opposition, Cotton Exchange states, "should this Court decide to reconsider its ruling on Campo's motion for Summary Judgment, [it] asks that [the Court] also reconsider (1) its ruling that [Cotton Exchange] was not assigned [Supreme Bright's] right to enforce Campo's statutorily implied warranty of good workmanship and (2) [the Court's] failure to rule on [Cotton

---

[1] Defendants Campo and CRS were added on February 23, 2017 in Plaintiff's amended complaint. R. Doc. 23.
[2] On March 22, 2019, Defendant CRS filed a motion to dismiss contending Cotton Exchange had no right of action against it in contract or tort. R. Doc. 156. On May 16, 2019, the Court denied CRS's motion, holding Supreme Bright retained its personal right to sue CRS after the sale to Cotton Exchange and thus validly transferred this right to Cotton Exchange after the sale pursuant to the amended Assignment and Assumption Agreement. R. Doc. 198.

3

Exchange's] contention that [it] was assigned the right to sue Campo in tort via the January 31, 2017 Settlement and Release Agreement." R. Doc. 209 at 1–2.

## III. LAW & ANALYSIS

The Court first considers the issue of whether it committed a manifest error of law, as Campo and Cotton Exchange both contend, before considering whether to certify for interlocutory appeal the issue of whether Cotton Exchange may sue Campo for negligence, despite not being in privity of contract with Campo.

### A. Motions for Reconsideration

Although the Federal Rules of Civil Procedure do not provide specifically for motions seeking reconsideration, in this Circuit, motions styled as motions for reconsideration are evaluated under Rules 54(b), 59, or 60. *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, No. 11-1659, 2014 WL 1365950, at *1 (E.D. La. Apr. 7, 2014). Because Rules 59 and 60 apply to final judgments only, a motion to reconsider that challenges an interlocutory order is analyzed pursuant to Rule 54(b), which provides courts with "the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Martikean v. United States*, No. 11-1774, 2014 WL 4631620, at *2 (N.D. Tex. Sept. 16, 2014) (quoting *Iturralde v. Shaw Grp., Inc.*, 512 F. App'x 430, 432 (5th Cir. 2013)); *Gulf Fleet Tiger Acquisition, LLC v. Thoma–Sea Ship Builders, LLC*, 282 F.R.D. 146, 151–52 (E.D. La. 2012); *United States v. Randa*, 709 F.3d 472, 479 (5th Cir. 2013).

Under Rule 54(b), "District courts have considerable discretion in deciding whether to grant a motion to reconsider an interlocutory order." *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002). Courts in the Eastern District of Louisiana generally analyze motions to reconsider interlocutory orders consistent with Rule 59(e). *See Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09–4369, 2010 WL 1424398, at *4

n.54 (E.D. La. Apr. 5, 2010) (collecting cases); *Gulf Fleet*, 282 F.R.D. at 152 n.40 (same). Specifically, courts consider whether: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law. *Fairley v. Wal-Mart Stores, Inc.*, No. 15-0462, 2016 WL 2992534, at *2 (E.D. La. May 24, 2016).

The Court is mindful that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Clancy v. Employers Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)).

### 1. Whether all of Cotton Exchange's negligence claims against Campo should be dismissed

In its motion, Campo takes the position that the Court's May 3, 2019 Order & Reasons was contrary to law, largely basing its argument on the Louisiana Supreme Court's decision in *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267, (La. 10/25/11), 79 So. 3d 246—specifically, *Eagle Pipe*'s discussion of Louisiana's subsequent purchaser rule. Louisiana's subsequent purchaser rule holds that a subsequent owner of property has no right of action against a third-party for damage the third-party inflicted prior to the subsequent owner's acquiring the property, absent an assignment or subrogation of the prior owner's personal right of action. *See Catahoula Lake Invests., LLC v. Hunt Oil Co.*, 2017-649, p. 2 (La. App. 3 Cir. 1/10/18), 237 So. 3d 585, 587. Essentially, the doctrine holds that because the damage was inflicted before the subsequent purchaser had any legal interest in the property, she did not personally sustain the injury, and therefore, has no personal right of action against the tortfeasor. *See Clark v. J.L. Warner & Co.*, 6 La. Ann. 408 (1851) ("[T]he reparation must be made to him who suffered the injury."). Thus, although "the purchaser of property is presumed to acquire all actions appurtenant to the property, and necessary to its perfect enjoyment, . . . as to damages actually suffered by the vendor before the sale, they are personal to

him, and cannot be recovered by the purchaser, without an express subrogation." *Payne v. James*, 7 So. 457, 458 (1890). This rule applies regardless of whether the damage is apparent at the time of sale. *Eagle Pipe*, 79 So. 3d at 256–57.

According to Campo, this rule prevents Cotton Exchange from bringing claims against Campo for damages allegedly inflicted prior to the sale of the hotel from Supreme Bright to Cotton Exchange. The Court has acknowledged and applied this concept to other Defendants' claims in this case. *See, e.g.*, R. Docs. 198, 210. The Court disagrees, however, that the subsequent purchaser rule prevents Cotton Exchange, which alleges it "has suffered damages as a direct and proximate cause of Campo's negligent [planning, development, and design work]," R. Doc. 23 at ¶ 87, from bringing negligence claims against Campo for damages sustained during its ownership of the property. Although the complaint chiefly alleges Cotton Exchange is entitled to relief based on Campo's allegedly defective design, which the Court previously found Cotton Exchange lacks standing to bring, the complaint nevertheless also alleges Campo's design caused the hotel to sustain water and moisture damage that manifested during Cotton Exchange's ownership of the property. It is the latter allegation upon which the Court based its denial of Campo's motion for summary judgment.

The chief and dispositive distinction between the issue presented in this case and that presented in *Eagle Pipe* is the duty owed by a design professional, such as Campo, to third parties, such as Cotton Exchange—a duty the defendant in *Eagle Pipe* did not owe to a subsequent purchaser of the property. As Campo notes in its motion seeking reconsideration, the Court based its denial of summary judgment on *Williams v. Wood*, 2017-1049 (La. App. 4 Cir. 10/31/2018), 258 So. 3d 834, 841, *writ denied*, 262 So. 3d 902 (La. 1/28/2019). In *Williams*, the Louisiana Fourth Circuit held that a design professional owes a duty of care to subsequent owners of property, even when the professional and the subsequent owner are not in privity of contract. *Id.* at 841. As the *Williams* court explained, Louisiana law:

> recognizes the existence of a duty of care owed by design professionals to persons with whom the design professional does not have privity. In such a case, this Court has concluded that 'absent privity of contract a cause of action cannot be asserted based on breach of contract; however, this does not preclude asserting a claim for damages based on the wrongdoer's tort.'

*Id.* at 841 (quoting *MR Pittman Grp., LLC v. Plaquemines Par. Gov't*, 2015-0396, p. 5, n. 1 (La. App. 4 Cir. 12/2/15), 182 So. 3d 291, 294). Thus, "'where the damage sued for is not the defective work but is instead damage caused by the defective work, a tort action against the contractor is proper when the elements for delictual recovery are present.'" *Id.* (quoting *N. Clark, L.L.C. v. Chisesi*, 2016-0599, p. 10 (La. App. 4 Cir. 12/7/16), 206 So. 3d 1013, 1020 (internal citations omitted)). In the instant case, like the plaintiff in *Williams*, Cotton Exchange brings tort claims against Campo for the damages allegedly caused by Campo's defective work.

Looking to *Williams* and *Eagle Pipe*, the concepts articulated in each case are not in conflict, as Campo apparently argues. Campo cites *MR Pittman Group, LLC v. Plaquemines Parish Government*, 2015-0396, (La. App. 4 Cir. 12/2/15), 182 So. 3d 291, 294 n.1 for its position. Notably, in *MR Pittman*, Louisiana's Fourth Circuit Court of Appeal "affirm[ed] the trial court's judgment sustaining the exception of prescription"—it did not affirm a dismissal based on the subsequent purchaser rule. *Id.* at 299–300. Moreover, footnote 1, to which Campo points specifically reads, in full:

> Louisiana recognizes the existence of a duty of care owed by design professionals to persons with whom the design professional does not have privity. In such a case, this Court has concluded that "absent privity of contract a cause of action cannot be asserted based on breach of contract; however, this does not preclude asserting a claim for damages based on the wrongdoer's tort."

*Id.* at 294 n.1 (quoting *Gurtler, Hebert and Co., Inc. v. Weyland Machine Shop, Inc.*, 405 So. 2d 660, 662 (La. App. 4 Cir. 1981) and citing *Farrell Construction v. Jefferson Parish*, 693 F. Supp. 490, 492 (E.D. La. 1988), *rev'd on other grounds*, 896 F.2d 136 (5th Cir. 1990)). This statement does not support Campo's position. In fact, it contradicts it.

7

Campo's citation to *N. Clark, L.L.C. v. Chisesi*, 2016-0599 (La. App. 4 Cir. 12/7/16), 206 So. 3d 1013 fairs no better. In *N. Clark*, Louisiana's Fourth Circuit affirmed the dismissal of a homeowner's suit against the architect that designed the homes built on a neighboring property. *Id.* at 1014. The court explained, "for [the] plaintiffs to have a right of action against [the architect], [they] must either (1) have an existing contract with [the architect]; or (2) allege a duty owed to them by [the architect] and a breach of the same." *Id.* at 1019. It was undisputed that the homeowners were not in privity with the architects; rather, "The allegations in the [plaintiffs'] petition present[ed] claims of [the architect's] professional negligence (malpractice)—defective design of the neighboring houses." *Id.* at 1020–21.

In considering whether the plaintiffs properly alleged the defendant architect owed a duty to them, the *N. Clark* court then discussed the Louisiana Fourth Circuit's discussion in *Gurtler, Hebert and Company, Inc. v. Weyland Machine Shop, Inc.*, 405 So. 2d 660 (La. App. 4 Cir. 1981), describing the case as follows:

> In *Gurtler*, the subcontractor alleged that "the architect failed to provide adequate plans and specifications, to act reasonably in approving or rejecting the shop or detailed drawings submitted by Weyland [the subcontractor] and to notify timely other sub-contractors and suppliers 'of decisions solely within its discretion,' leading to delays and cost overruns." 405 So. 2d at 662. Based on our review of the allegations of the petition, we concluded that the subcontractor had asserted a cause of action in tort and thus had a right of action against the architect.

206 So. 3d at 1020. The *N. Clark* court thus found "the subcontractor in *Gurtler* pled a tort claim; the [plaintiffs] here," who brought claims based on malpractice only, "failed to do so." *Id.* at 1020 (citing *Gurtler*, 405 So. 2d at 662). Because the plaintiffs failed to bring a tort claim against the architect and failed to allege the architect owed them a duty, the court affirmed the trial court's dismissal of the plaintiffs' claims against the architect.[3]

---

[3] Moreover, the *N. Clark* court quoted *MR Pittman* as follows: "Louisiana recognizes the existence of a duty of care owed by design professionals [*including architects*] to persons with whom the design professional does not have privity. In such a case, this Court has concluded that 'absent privity of contract a cause of action cannot be asserted

8

In this case, Cotton Exchange has alleged Campo owed it a duty and that Campo breached that duty. *See Williams*, 258 So. 3d at 841. Campo takes issue with the Court's description of the injuries Cotton Exchange alleges it sustained as a result of Campo's allegedly faulty design. True, in *Eagle Pipe*, the Louisiana Supreme Court concluded that even latent damage was subject to the subsequent purchaser rule. 79 So. 3d 246 at 279 ("The fact that a subsequent purchaser 'discovers' the continuing ill effects of the original tortious acts does not give rise to a new, discrete right of action in tort."); *see Prados v. S. Cent. Bell Tel. Co.*, 329 So. 2d 744, 750–51 (La. 1975) (on rehearing) (stating that "a purchaser cannot recover from a third party for damage to the property *incurred* prior to the sale" and therefore affirming the district court's dismissal because "[t]he right to damages *accrued* to the lessor prior to the sale" (emphasis added)). Importantly, however, the damage in *Eagle Pipe* was allegedly caused by a private company, which did not owe a duty of care to third parties, not a design professional, which does owe such a duty. "Several recent decisions have placed building contractors on the same footing as sellers of goods, and have held them to the general standard of reasonable care for the protection of anyone who may foreseeably be endangered by the negligence, even after acceptance of the work." *Marine Ins. Co. v. Strecker*, 100 So. 2d 493, 530 (La. 1957) (footnote omitted) (collecting cases).

For example, in *Marine Insurance Co. v. Strecker*, the Supreme Court of Louisiana observed that, although the plaintiff could not sue the defendant contractor for the repair of defectively hung cabinets because she and the design professional were not in privity of contract, the plaintiff could sue the design professional for the damage caused by this defect—specifically, damage to the plaintiff's glassware that broke when the cabinet fell. *Id.* at 524, 532. Similarly, in *Williams*, the plaintiffs alleged the defendant architect's faulty design caused excessive flexing in

---

based on breach of contract; however, this does not preclude asserting a claim for damages based on the wrongdoer's tort.'" 206 So. 3d at 1020 (emphasis added).

the floor framing of their home, causing the sheetrock to crack. 258 So. 3d at 840–41. Louisiana's Fourth Circuit Court of Appeal found the plaintiffs' petition stated a claim for negligence against the architect, despite their being the subsequent purchasers of the home and lacking privity with the defendant architect. *Id.* at 841. Much akin to the damages alleged in this case, in *Marine Insurance* and *Williams* the damage was allegedly caused by a design professional's faulty workmanship that was performed during a third-party's ownership of the property, but which manifested while the property was in the plaintiffs' possession.

As is made plain by the cases cited above, and as the Court cautioned in its May 3, 2019 Order & Reasons, Cotton Exchange's ability to sue Campo for negligence does not come without limitation:

> Where the damage sued for is the defectively performed work itself, the action is strictly a contractual one and only those who are in privity with the contractor have an action against him. However, where the damage sued for is not the defective work but is instead damage caused by the defective work, a tort action against the contractor is proper when the elements for delictual recovery are present.

*Gurtler*, 405 So. 2d at 662 (quoting *Lumber Prods., Inc.*, 255 So. 2d at 787); *See also Kendrick v. Mason*, 99 So. 2d 108, 110 (1958), (finding the plaintiff could not have sued the contractor for the cost of remedying defects in the installation of the town sewer system, but his tort action against the contractor was allowed for damage to his home caused by defects in the installation of the sewer system even though he was no privy to the contract); *Truxillo v. Gentilly Med. Bldg., Inc.*, 225 So. 2d 488, 489 (La. App. 4 Cir. 1969) (finding a third-party who was neither an owner nor in privity of contract with the contractor could sue the contractor for negligence when the contractor's actions caused excess water to accumulate, precipitating the plaintiff's fall).

In this case, it is possible, and Cotton Exchange has alleged, that some of the damage it sustained as a result of Campo's allegedly faulty workmanship was incurred during Cotton Exchange's ownership of the hotel. For example, Cotton Exchange has represented that many hotel rooms developed mold, requiring hotel patrons to be relocated. It is possible there was no mold at

the time of sale, but that the mold damage developed during Cotton Exchange's ownership as a result of Campo's allegedly faulty workmanship. Moreover, the damages allegedly incurred as a result of closing the hotel were clearly sustained during Cotton Exchange's ownership. Campo has offered no evidence to the contrary and therefore is not entitled to summary judgment as to any damages sustained post-purchase.

Given the foregoing, the Court concludes Campo has failed to point to any manifest error of law or fact upon which the Court's May 3, 2019 Order & Reasons is based, nor has Campo justified its motion by directing the Court's attention to an intervening change in controlling law. *See Fairley*, 2016 WL 2992534, at *2. As a result, the Court will deny Campo's motion to reconsider.

### 2. Whether Cotton Exchange can sue in tort for damages sustained prior to the sale or for breach of warranty

In its opposition, Cotton Exchange contends the Court never addressed whether Supreme Bright validly assigned to Cotton Exchange its personal right to sue Campo in tort. R. Doc. 209 at 15. As the Court stated in its May 3, 2019 Order & Reasons, however, "Having concluded Cotton Exchange never acquired the right to sue Campo based on the Architectural Agreement, the Court concludes Cotton Exchange never acquired the personal right to sue Campo for damage sustained to the hotel prior to its sale." R. Doc. 190 at 9; *see also id.* at 10 ("As a result, the Court will not dismiss Cotton Exchange's negligence claims, even though Supreme Bright never conveyed to Cotton Exchange its personal right to sue."). Cotton Exchange also asked the Court to reconsider its holding that "Cotton Exchange never acquired the right to enforce Campo's warranty." *Id.* As Campo states in its reply, and the Court agrees,

> CEIP's requests for reconsideration are . . . not properly raised in its Response to Campo's Motion for Reconsideration. According to Federal Rule of Civil Procedure 7(b)(1), any request for a court order must be made by motion. Fed. R. Civ. P. 7(b)(1). "It is axiomatic that a memorandum in opposition does not equate to a motion for leave of court." *Lazard v. E. Baton Rouge Par. Sch. Bd.*, No. 12-005522013, 2013 U.S. Dist. LEXIS 100086, at *9 (M.D. La. July 15, 2013).

11

R. Doc. 218 at 2. As a result, the Court will not consider the arguments Cotton Exchange raises in its opposition asking the Court to reconsider its prior rulings on Cotton Exchange's breach of contract and warranty claims.

### B. Certifying an Issue for Interlocutory Appeal

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an issue for interlocutory appeal if its opinion constitutes a non-final order that: "[(1)] involves a controlling question of law as to which [(2)] there is substantial ground for difference of opinion and . . . an immediate appeal from the order [(3)] may materially advance the ultimate termination of the litigation." *See also In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991). The availability of such an appeal under § 1292(b) does not "jeopardiz[e] the usual rule of not permitting an appeal until all the proceedings on the trial court level are complete." 10 CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. JURIS. § 2658.2 (3d ed. 1998 & 2009 supp.).

An interlocutory appeal is "exceptional" and "does not lie simply to determine the correctness of a judgment." *Chauvin v. State Farm Mut. Auto. Ins. Co.*, Nos. 06-7145 & 06-8769, 2007 WL 4365387, at *2 (E.D. La. Dec. 11, 2007) (quoting *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Const. Co.*, 702 F.2d 67, 68–69 (5th Cir. 1983)). The moving party bears the burden of demonstrating that interlocutory appeal is appropriate. *In re FEMA Formaldehyde Prods. Liab. Litig.*, No. MDL 07-1873, 2008 WL 4923035, at *2 (E.D. La. Nov. 13, 2009) (citing *In re Complaint of L.L.P. & D. Marine, Inc.*, Nos. 97-1668, 97-2992 & 97-3349, 1998 WL 66100, at *1 (E.D. La. Feb. 13, 1998)).

In this case, Campo moves the Court to certify the issues addressed in this order for appeal, arguing "[i]t was legal error for this Court to solely apply the reasoning of *Williams* in determining whether [Cotton Exchange] has the substantive right to assert negligence claims against Campo" and that "[i]nstead, this Court should have applied the subsequent purchaser rule to make this

determination." R. Doc. 200-1 at 11. For the reasons stated above, the Court disagrees with Campo and concludes it has failed to bear its burden of demonstrating it is entitled to this exceptional remedy. The Court also notes that this litigation has been pending since 2016, with a significant amount of time having been spent in arbitration. The Court finds certifying this issue for appeal at such a late date will not materially advance the ultimate termination of the litigation. As a result, the Court will deny Campo's motion to certify the issues discussed herein for interlocutory appeal.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant John T. Campo's Motion for Reconsideration of the Court's Partial Denial of Summary Judgment, R. Doc. 200, be and hereby is **DENIED**.

New Orleans, Louisiana on this 10th day of July, 2019.

_____
Eldon E. Fallon
U.S. District Court Judge