# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COTTON EXCHANGE INVESTMENT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-17543** |
| **XCEL AIR CONDITIONING ET AL.** | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is a motion seeking reconsideration of the Court's partial denial of summary judgment filed by Xcel Air Conditioning Services, Inc. ("Xcel"). R. Doc. 221. The motion is opposed. R. Doc. 226. The Court now rules as follows.

## I. BACKGROUND

Plaintiff Cotton Exchange Investment Properties LLC ("Cotton Exchange") alleges its hotel was damaged as a result of faulty workmanship performed by Defendants John T. Campo ("Campo") and Commercial Renovation Services, Inc. ("CRS") during the hotel's renovation. R. Doc. 23 at 2. Plaintiff contends the hotel also sustained damages as a result of defective maintenance and repairs to the hotel's HVAC system performed by Defendant Xcel.

In its complaint, Plaintiff alleges that in 2014, Supreme Bright New Orleans LLC ("Supreme Bright"), which owned the hotel at the time, executed several contracts for the hotel's renovation. *Id.* In January 2014, Supreme Bright contracted with Xcel to provide HVAC services, including the maintenance of the hotel's cooling tower, roof top units, and chilled water pumps. R. Doc. 1 at 3. That same month, Supreme Bright entered into a contract with Campo for Campo to provide architectural, design, and engineering services. R. Doc. 23 at 4. A few months later, Supreme Bright contracted with CRS to serve as general contractor for the project. R. Doc. 23 at 2.

In June 2015, Pacific Hospitality Group ("PHG") entered into a purchase agreement with

1

Supreme Bright to buy the hotel, whereby PHG would assume the rights to all three contracts. R. Doc. 1 at 3. PHG subsequently assigned all of its rights, title, and interest in the purchase to Cotton Exchange, including the contracts with Xcel, Campo, and CRS. Thereafter, Cotton Exchange executed the purchase agreement with Supreme Bright (the "Assignment and Assumption Agreement"). *Id.* at 4. On January 31, 2017, Cotton Exchange and Supreme Bright entered into a settlement agreement resolving a matter unrelated to the issue at bar, wherein the parties amended the Assignment and Assumption Agreement's terms by adding the following language:

> Assignor hereby assigns, transfers and conveys all of Assignor's rights, title and interest in and to the Assigned Property, including all contractual and personal rights in and/or related to the Hotel, including without limitation the personal right to sue for damages, that Assignor has against CRS, subcontractors and vendors to CRS, and any other contractors or vendors engaged by [Supreme Bright] prior to the Closing Date.

R. Doc. 199-8 at 4–5.

Cotton Exchange alleges that under the terms of their respective contracts, Cotton Exchange was indemnified by all three Defendants for any property damage caused by their negligent acts or omissions related to the scope of their work. R. Doc. 1 at 5; R. Doc. 23 at 3–4. According to Cotton Exchange, the hotel suffered serious moisture damage as a result of Defendants' faulty workmanship, including water-damaged walls and floors due to exposed chilled water piping, missing or improperly sealed insulation, and cracked or leaking draining pans. R. Doc. 23 at 7. Plaintiff claims it had to close the hotel because of this extensive damage. *Id.* at 6. In December 2015, Plaintiff alleges it canceled the HVAC contract with Xcel pursuant to its terms and notified Xcel of the damage on three occasions. R. Doc. 1 at 5, 6. Xcel allegedly did not respond to the demand for indemnity. *Id.* at 6. Additionally, Plaintiff avers it demanded indemnity from CRS and Campo, but was also unsuccessful in these demands. R. Doc. 23 at 7. As a consequence, Plaintiff filed suit on December 16, 2016, bringing breach of contract and negligence claims against all three Defendants and breach of warranty of good workmanship

2

claims against CRS and Campo. *Id.* at 7–16.[1]

On May 14, 2019, Defendant Xcel filed a motion for summary judgment, R. Doc. 195, which the Court granted in part and denied in part, R. Doc. 210. The Court granted summary judgment as unopposed with respect to two Aaon Unit repair contracts, *id.* at 4, but denied summary judgment with respect to the fan coil unit cleaning contract (the "FSU contract"), finding the Settlement Agreement reached between Supreme Bright and Cotton Exchange on January 31, 2017 amended the Assignment and Assumption Agreement specifically assigning to Cotton Exchange Supreme Bright's personal right to sue on that contract, *id.* at 6.[2]

## II. PRESENT MOTION

In the instant motion, Xcel seeks reconsideration of the Court's denial of summary judgment on Cotton Exchange's claims brought pursuant to the FSU contract. R. Doc. 221. Alternatively, Xcel moves the Court to certify the issue for interlocutory appeal. *Id.* Xcel argues the "sole case cited by the [C]ourt in denying Xcel's motion for summary judgment does not support the claims against it." *Id.* at 1. According to Xcel, the subsequent purchaser rule as articulated by the Louisiana Supreme Court in *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.* bars Cotton Exchange's claims. *Id.*

In opposition, Cotton Exchange states, "Xcel's motion for reconsideration requests that this Court examine—for a third time—the validity of Supreme Bright's post-sale assignment to CEIP

---

[1] Defendants Campo and CRS were added on February 23, 2017 in Plaintiff's amended complaint. R. Doc. 23.
[2] On March 22, 2019, Defendant CRS filed a motion to dismiss contending Cotton Exchange had no right of action against it in contract or tort. R. Doc. 156. On May 16, 2019, the Court denied CRS's motion, holding Supreme Bright retained its personal right to sue CRS after the sale to Cotton Exchange and thus validly transferred this right to Cotton Exchange after the sale pursuant to the amended Assignment and Assumption Agreement. R. Doc. 198. Similarly, On March 29, 2019, Defendant Campo filed a motion for summary judgment, R. Doc. 162, which the Court granted in part and denied in part, R. Doc. 190. With respect to Cotton Exchange's breach of contract and breach of warranty claims against Campo, the Court granted summary judgment because Campo and Supreme Bright's agreement contained language requiring Supreme Bright to obtain Campo's explicit consent before assigning their agreement to a third party. *Id.* at 8. With respect to Cotton Exchange's negligence claims against Campo, however, the Court denied summary judgment because Cotton Exchange's complaint alleges, in part, that the hotel sustained damage caused by Campo during Cotton Exchange's ownership of the property. *Id.* at 10.

3

of the personal right to sue for damages," but does not offer any new legal theories to support its position. R. Doc 226 at 5. Cotton Exchange also points out that "Xcel's current motion contains paragraphs that are taken verbatim from its reply memorandum in support of its motion for partial summary judgment." *Id.* at 5. Because the Court has already considered and rejected these arguments, Cotton Exchange contends, Xcel has not met its burden of establishing a manifest error of law or presenting newly discovered evidence. *Id.*

## III. LAW & ANALYSIS

The Court first considers the issue of whether it committed a manifest error of law before considering whether to certify for interlocutory appeal the issue of whether Cotton Exchange validly obtained from Supreme Bright the personal right to sue Xcel based on the FSU contract.

### A. Motion for Reconsideration

Although the Federal Rules of Civil Procedure do not provide specifically for motions seeking reconsideration, in this Circuit, motions styled as motions for reconsideration are evaluated under Rules 54(b), 59, or 60. *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, No. 11-1659, 2014 WL 1365950, at *1 (E.D. La. Apr. 7, 2014). Because Rules 59 and 60 apply to final judgments only, a motion to reconsider that challenges an interlocutory order is analyzed pursuant to Rule 54(b), which provides courts with "the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Martikean v. United States*, No. 11-1774, 2014 WL 4631620, at *2 (N.D. Tex. Sept. 16, 2014) (quoting *Iturralde v. Shaw Grp., Inc.*, 512 F. App'x 430, 432 (5th Cir. 2013)); *Gulf Fleet Tiger Acquisition, LLC v. Thoma–Sea Ship Builders, LLC*, 282 F.R.D. 146, 151–52 (E.D. La. 2012); *United States v. Randa*, 709 F.3d 472, 479 (5th Cir. 2013).

Under Rule 54(b), "District courts have considerable discretion in deciding whether to grant a motion to reconsider an interlocutory order." *Livingston Downs Racing Ass'n, Inc. v.*

*Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002). Courts in the Eastern District of Louisiana generally analyze motions to reconsider interlocutory orders consistent with Rule 59(e). *See Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09–4369, 2010 WL 1424398, at *4 n.54 (E.D. La. Apr. 5, 2010) (collecting cases); *Gulf Fleet*, 282 F.R.D. at 152 n.40 (same). Specifically, courts consider whether: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law. *Fairley v. Wal-Mart Stores, Inc.*, No. 15-0462, 2016 WL 2992534, at *2 (E.D. La. May 24, 2016).

The Court is mindful that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Clancy v. Employers Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)).

In its motion, Xcel apparently takes the position that the Court's May 3, 2019 Order & Reasons was contrary to law, largely basing its argument on the Louisiana Supreme Court's decision in *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267, (La. 10/25/11), 79 So. 3d 246—specifically, *Eagle Pipe*'s discussion of Louisiana's subsequent purchaser rule. Louisiana's subsequent purchaser rule holds that a subsequent owner of property has no right of action against a third-party for damage the third-party inflicted prior to the subsequent owner's acquiring the property, absent an assignment or subrogation of the prior owner's personal right of action. *See Catahoula Lake Invests., LLC v. Hunt Oil Co.*, 2017-649, p. 2 (La. App. 3 Cir. 1/10/18), 237 So. 3d 585, 587. Essentially, the doctrine holds that because the damage was inflicted before the subsequent purchaser had any legal interest in the property, she did not personally sustain the injury, and therefore, has no personal right of action against the tortfeasor. *See Clark v. J.L. Warner & Co.*, 6 La. Ann. 408 (1851) ("[T]he reparation must be made to him who suffered the injury."). Thus,

although "the purchaser of property is presumed to acquire all actions appurtenant to the property, and necessary to its perfect enjoyment, . . . as to damages actually suffered by the vendor before the sale, they are personal to him, and cannot be recovered by the purchaser, without an express subrogation." *Payne v. James*, 7 So. 457, 458 (1890). This rule applies regardless of whether the damage is apparent at the time of sale. *Eagle Pipe*, 79 So. 3d at 256–57.

According to Xcel, this rule prevents Cotton Exchange from bringing claims against Xcel for damages allegedly inflicted prior to the sale of the hotel from Supreme Bright to Cotton Exchange. In its motion, Xcel repeatedly states the rule of *Eagle Pipe* "clearly holds that a subsequent purchaser may not sue for damages sustained by the previous owner." R. Doc. 221-1 at 2. This statement, while half true, fails to articulate the rule in full. As stated above, a subsequent purchaser may not sue a tortfeasor for damage inflicted prior to her ownership "[i]n the absence of an assignment or subrogation of this personal right." 79 So. 3d at 279.

Next, Xcel argues Supreme Bright's personal right to sue Xcel "<u>was not assigned or subrogated at the time of the change in ownership and accordingly, there was no such right ot assign to CEIP as it was no longer viable</u>." R. Doc. 221-1 at 6. This argument is again belied by the holding of *Eagle Pipe* itself. In *Eagle Pipe*, the court stated, "the former property owners still have a personal right of action against a tortfeasor for the damage he inflicted on the property while they were the owners, *despite the fact that they no longer own the property*." 79 So. 3d at 264.

As *Eagle Pipe* makes plain, a former owner's personal right to sue endures the property's sale, and a subsequent owner may sue a tortfeasor if the former owner assigns to the subsequent purchaser her personal right to do so. In this case, Supreme Bright validly conveyed to Cotton Exchange its personal right to sue Xcel in the January 31, 2017 amendment to the Assignment and Assumption Agreement. Accordingly, the Court will deny Xcel's motion seeking reconsideration.

### B. Certifying an Issue for Interlocutory Appeal

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an issue for interlocutory appeal if its opinion constitutes a non-final order that: "[(1)] involves a controlling question of law as to which [(2)] there is substantial ground for difference of opinion and . . . an immediate appeal from the order [(3)] may materially advance the ultimate termination of the litigation." *See also In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991). The availability of such an appeal under § 1292(b) does not "jeopardiz[e] the usual rule of not permitting an appeal until all the proceedings on the trial court level are complete." 10 CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. JURIS. § 2658.2 (3d ed. 1998 & 2009 supp.).

An interlocutory appeal is "exceptional" and "does not lie simply to determine the correctness of a judgment." *Chauvin v. State Farm Mut. Auto. Ins. Co.*, Nos. 06-7145 & 06-8769, 2007 WL 4365387, at *2 (E.D. La. Dec. 11, 2007) (quoting *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Const. Co.*, 702 F.2d 67, 68–69 (5th Cir. 1983)). The moving party bears the burden of demonstrating that interlocutory appeal is appropriate. *In re FEMA Formaldehyde Prods. Liab. Litig.*, No. MDL 07-1873, 2008 WL 4923035, at *2 (E.D. La. Nov. 13, 2009) (citing *In re Complaint of L.L.P. & D. Marine, Inc.*, Nos. 97-1668, 97-2992 & 97-3349, 1998 WL 66100, at *1 (E.D. La. Feb. 13, 1998)).

In this case, Xcel moves the Court to certify the issues addressed in this order for appeal, arguing "there was not assignment of [Supreme Bright's personal right to sue] at the time of sale" and therefore that right "did not 'survive the change of ownership in the property.'" R. Doc. 221-1 at 8. For the reasons stated above, the Court disagrees with Xcel and concludes it has failed to bear its burden of demonstrating it is entitled to this exceptional remedy. As a result, the Court will deny Xcel's motion to certify the issue for interlocutory appeal.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant Xcel Air Conditioning Services' Motion for Reconsideration of the Court's Partial Denial of Summary Judgment, R. Doc. 221, be and hereby is **DENIED**.

New Orleans, Louisiana on this 10th day of July, 2019.

_____
Eldon E. Fallon
U.S. District Court Judge