UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COTTON EXCHANGE INVESTMENT | CIVIL ACTION |
| VERSUS | NO. 16-17543 |
| XCEL AIR CONDITIONING ET AL. | SECTION "L" (5) |

## ORDER & REASONS

Before the Court is a motion seeking reconsideration of the Court's partial grant of summary judgment filed by Plaintiff Cotton Exchange Investment Properties LLC ("Cotton Exchange"). R. Doc. 229. Defendant John T. Campo ("Campo") opposes the motion. R. Doc. 237. The Court now rules as follows.

### I. BACKGROUND

Plaintiff Cotton Exchange Investment Properties LLC ("Cotton Exchange") alleges its hotel was damaged as a result of faulty workmanship performed by Defendants Campo and Commercial Renovation Services, Inc. ("CRS") during the hotel's renovation. R. Doc. 23 at 6, 10, 16. Plaintiff contends the hotel also sustained damages as a result of defective maintenance and repairs to the hotel's HVAC system performed by Defendant Xcel Air Conditioning Services, Inc. ("Xcel").

In its complaint, Plaintiff alleges that in 2014, Supreme Bright New Orleans LLC ("Supreme Bright"), which owned the hotel at the time, executed several contracts for the hotel's renovation. *Id.* at 2. In January 2014, Supreme Bright contracted with Xcel to provide HVAC services, including the maintenance of the hotel's cooling tower, roof top units, and chilled water pumps. R. Doc. 1 at 3. That same month, Supreme Bright entered into a contract with Campo for architectural, design, and engineering services. R. Doc. 23 at 4. A few months later, Supreme Bright contracted with CRS to serve as general contractor for the renovation project. R. Doc. 23 at 2.

1

In June 2015, Pacific Hospitality Group ("PHG") entered into a purchase agreement with Supreme Bright to buy the hotel, whereby PHG would assume the rights to all three contracts. R. Doc. 1 at 3. PHG subsequently assigned all of its rights, title, and interest in the purchase to Cotton Exchange, including the contracts with Xcel, Campo, and CRS. *Id.* at 4. Thereafter, Cotton Exchange executed the purchase agreement with Supreme Bright (the "Assignment and Assumption Agreement"). *Id.* Notably, section 10.3 of the contract Campo held with Supreme Bright addresses the issue of the assignment of rights, stating:

> The Owner [Supreme] and Architect [Campo], respectively, bind themselves, their agents, successors, assigns and legal representatives to this Agreement. Neither the Owner nor the Architect shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to a lender providing financing to the Project if the lender agrees to assume the Owner's rights and obligations under this Agreement.

R. Doc. 162-5 at 16. Section 10.5 of the contract states, "[n]othing contained in the Agreement shall create a contractual relationship with or cause of action in favor of a third party against either the Owner or Architect." *Id.*

On January 31, 2017, Cotton Exchange and Supreme Bright entered into a settlement agreement resolving a matter unrelated to the issue at bar, wherein the parties amended the Assignment and Assumption Agreement's terms by adding the following language:

> Assignor hereby assigns, transfers, and conveys to Assignee all of Assignor's rights, title and interest in and to the Assigned Property, including all contractual and personal rights in and/or related to the Hotel, including without limitation the personal right to sue for damages, that Assignor has against CRS, subcontractors and vendors to CRS, and any other contractors or vendors engaged by [Supreme Bright] prior to the Closing Date.

R. Doc. 199-8 at 4–5.

Cotton Exchange alleges that under the terms of their respective contracts, Cotton Exchange was indemnified by all three Defendants for any property damage caused by their negligent acts or omissions related to the scope of their work. R. Doc. 1 at 5; R. Doc. 23 at 3–4.

2

According to Cotton Exchange, the hotel suffered serious moisture damage as a result of Defendants' faulty workmanship, including water-damaged walls and floors due to exposed chilled water piping, missing or improperly sealed insulation, and cracked or leaking draining pans. R. Doc. 23 at 6. Plaintiff claims it had to close the hotel because of this extensive damage. *Id.* at 6. In December 2015, Plaintiff alleges it terminated the HVAC contract with Xcel pursuant to its terms and notified Xcel of the damage on three occasions. R. Doc. 1 at 5, 6. Xcel allegedly did not respond to the demand for indemnity. *Id.* at 6. Additionally, Plaintiff avers it demanded indemnity from CRS and Campo, but was also unsuccessful in these demands. R. Doc. 23 at 7. Consequently, Plaintiff filed suit on December 16, 2016, bringing breach of contract and negligence claims against all three Defendants and breach of warranty of good workmanship claims against CRS and Campo. *Id.* at 7–16.[1]

On March 29, 2019, Defendant Campo filed a motion for summary judgment, R. Doc. 162, which the Court granted in part and denied in part on May 3, 2019, R. Doc. 190. With respect to Cotton Exchange's breach of contract and breach of warranty claims against Campo, the Court granted summary judgment because sections 10.3 and 105 of Campo and Supreme Bright's agreement contained language requiring Supreme Bright to obtain Campo's explicit consent before assigning their agreement to a third party, which Supreme Bright never obtained. *Id.* at 8. With respect to Cotton Exchange's negligence claims against Campo, however, the Court denied summary judgment because Cotton Exchange's complaint alleges, in part, that the hotel sustained damage caused by Campo during Cotton Exchange's ownership of the property. *Id.* at 9–10.[2]

---

[1] Defendants Campo and CRS were added on February 23, 2017 in Plaintiff's amended complaint. R. Doc. 23.

[2] On March 22, 2019, Defendant CRS filed a motion to dismiss contending Cotton Exchange had no right of action against it in contract or tort. R. Doc. 156. On May 16, 2019, the Court denied CRS's motion, holding Supreme Bright retained its personal right to sue CRS after the sale to Cotton Exchange and thus validly transferred this right to Cotton Exchange after the sale pursuant to the amended Assignment and Assumption Agreement. R. Doc. 198. On June 4, 2019, the Court denied in part Defendant Xcel's motion for summary judgment. R. Doc. 210. On May 22, 2019, Campo moved

## II. PRESENT MOTION

In the instant motion, Cotton Exchange seeks reconsideration of the Court's dismissal of Cotton Exchange's negligence and breach of warranty claims against Campo. R. Doc. 229. Cotton Exchange argues this Court committed legal error in granting summary judgment in favor of Campo with respect to Cotton Exchange's negligence and breach of warranty claims. R. Doc. 229-1 at 8, 12. According to Cotton Exchange, in the January 31, 2017 amendment to the Assignment and Assumption Agreement, Supreme Bright validly conveyed to Cotton Exchange its personal right to sue Campo in tort and for Campo's alleged breach of their implied warranty of good workmanship. *Id.*

In opposition, Campo contends the January 31, 2017 amendment to the Assignment and Assumption Agreement did not convey to Cotton Exchange Supreme Bright's personal right to sue, as the amendment pertained to "contractors," which, as an architect, Campo contends it is not. R. Doc. 237. Moreover, Campo argues, even if the Court finds it is a contractor under the Assignment and Assumption Agreement's terms, Cotton Exchange admittedly did not obtain the rights to the contract held between Campo and Supreme Bright, and therefore Cotton Exchange lacks standing to enforce any implied warranty of good workmanship. *Id.* at 5.

## III. LAW & ANALYSIS

Because it is dispositive, the Court considers whether the January 31, 2017 amendment to the Assignment and Assumption Agreement validly transferred to Cotton Exchange Supreme Bright's personal right to sue in tort or for breach of the implied warranty of good workmanship.

---

the Court to reconsider its May 3, 2019 order to the extent it denied Campo's motion to dismiss. R. Doc. 200. The Court denied this motion on July 10, 2019. R. Doc. 227. On July 11, 2019 the Court also denied Xcel's motion to reconsider its June 4, 2019 denial of Xcel's motion to dismiss. R. Doc. 228.

### A. Motions for Reconsideration

Although the Federal Rules of Civil Procedure do not provide specifically for motions seeking reconsideration, in this Circuit, motions styled as motions for reconsideration are evaluated under Rules 54(b), 59, or 60. *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, No. 11-1659, 2014 WL 1365950, at *1 (E.D. La. Apr. 7, 2014). Because Rules 59 and 60 apply to final judgments only, a motion to reconsider that challenges an interlocutory order is analyzed pursuant to Rule 54(b), which provides courts with "the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Martikean v. United States*, No. 11-1774, 2014 WL 4631620, at *2 (N.D. Tex. Sept. 16, 2014) (quoting *Iturralde v. Shaw Grp., Inc.*, 512 F. App'x 430, 432 (5th Cir. 2013)); *Gulf Fleet Tiger Acquisition, LLC v. Thoma–Sea Ship Builders, LLC*, 282 F.R.D. 146, 151–52 (E.D. La. 2012); *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013).

Under Rule 54(b), "District courts have considerable discretion in deciding whether to grant a motion to reconsider an interlocutory order." *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002). Courts in the Eastern District of Louisiana generally analyze motions to reconsider interlocutory orders consistent with Rule 59(e). *See Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09–4369, 2010 WL 1424398, at *4 n.54 (E.D. La. Apr. 5, 2010) (collecting cases); *Gulf Fleet*, 282 F.R.D. at 152 n.40 (same). Specifically, courts consider whether: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law. *Fairley v. Wal-Mart Stores, Inc.*, No. 15-0462, 2016 WL 2992534, at *2 (E.D. La. May 24, 2016).

The Court is mindful that "[r]econsideration of a judgment after its entry is an extraordinary

remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Clancy v. Employers Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)).

### A. Whether Campo is a "contractor" under the amended assignment and assumption agreement's terms

As previously noted, on January 31, 2017, Cotton Exchange and Supreme Bright entered into a settlement agreement resolving a matter unrelated to the issue at bar, wherein the parties amended the Assignment and Assumption Agreement's terms by adding the following language:

> Assignor hereby assigns, transfers, and conveys all of Assignor's rights, title, and interest in and to the Assigned Property, including all contractual and personal rights in and/or related to the Hotel, including without limitation the personal right to sue for damages, that Assignor has against CRS, subcontractors and vendors to CRS, and any other contractors or vendors engaged by [Supreme Bright] prior to the Closing Date.

R. Doc. 199-8 at 4–5. Cotton Exchange contends the amendment's reference to "other contractors" validly assigned to Cotton Exchange Supreme Bright's personal right to sue Campo. R. Doc. 229. Campo disagrees, contending that under the technical meaning of the term, Campo is not a contractor, and therefore, Cotton Exchange never obtained the right to sue Campo.[3]

Under Louisiana law, "[w]ords of art and technical terms [in a contract] must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047; *see also Van Geffen v. Herbert*, 439 So. 2d 1257, 1259 (La. App. 5 Cir. 1983) ("[T]erms of art or technical phrases appearing in contracts are to be interpreted according to their received meaning in the profession or art in question."). "The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and [is] not assumed." *Clovelly Oil Co., LLC v. Midstates Petrol. Co., LLC*, 2012-2055, p. 5–6 (La. 3/19/13); 112 So. 3d 187, 192 (citing *Prejean v.*

---

[3] Although Cotton Exchange does not make the argument in the instant motion, throughout this litigation Cotton Exchange has maintained that the amendment to the Assignment and Assumption Agreement was not necessary, as the original Assignment and Assumption Agreement validly conveyed to Cotton Exchange Supreme Bright's personal right to sue the Defendants in this case. *See, e.g.*, R. Doc. 169 at 8. For the sake of thoroughness, the Court concludes the original agreement did not convey to Cotton Exchange Supreme Bright's personal right to sue, as the transfer of any personal right was not explicit. *See Prados v. S. Cent. Bell Tel. Co.*, 329 So.2d 744, 749–50 (La. 1975) (on rehearing).

*Guillory*, 10-0740 (La. 7/2/10), 38 So. 3d 274, 279). "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048. "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code art. 2053.

In this case, Cotton Exchange argues "Campo's classification as an 'architect' does not somehow exempt it from the general definition of 'contractor,'" because "Black's Law Dictionary defines 'contractor' quite literally as 'a party to a contract.'" R. Doc. 229-1 at 10. Cotton Exchange further argues the intent of the contracting parties, here Supreme Bright and Cotton Exchange, must be considered, and that "[g]iven the context of the Settlement Agreement, it would be implausible to conclude that these parties intended to exclude Campo from the assignment." *Id.* at 11 n.8. Cotton Exchange contends, "Obviously, Campo was a party to a contract, and it agreed in that contract to do work for [Supreme Bright]." *Id.* at 10. "Thus," Cotton Exchange submits, "Campo is a 'contractor' within the meaning of the [Amended Assignment and Assumption Agreement], and its attempt to impose a more stringent definition than the generally prevailing definition should be rejected." *Id.* at 10–11.

In its motion, Cotton Exchange cites *Caro Props. (A), LLC v. City of Gretna*, 08-248 (La. App. 5 Cir. 12/16/08); 3 So. 3d 29, wherein the Louisiana Fifth Circuit Court of Appeal found an assignment which provided that: "[Party A] agrees to assign any rights it has to recover from any responsible party including those responsible or at fault in connection with the demolition of the building" was a valid assignment of Party A's personal right to sue for damages. R. Doc. 229-1 at 11 (citing *Caro*, 3 So. 3d at 31–32). Cotton Exchange argues this case stand for the proposition that, although the reference to the personal right being assigned must be specific, only a general reference to the contract, party, or subset of entities against whom the transferor holds the right is

7

necessary to execute a valid transfer. *Id.* Thus, Cotton Exchange submits, the general term "contractor" is sufficient to transfer to Cotton Exchange Supreme Bright's personal right to sue Campo. *Id.* at 11–12.

In opposition, Campo counters that, "despite [Cotton Exchange's] contentions to the contrary, the generally prevailing meaning of the word 'contractor' is not simply one party to a contract, but instead refers to one who contracts to construct buildings." R. Doc. 237 at 7. In support of its position, Campo points to Black's Law Dictionary, Ballentine's Law Dictionary, the Merriam Webster Dictionary, and the Dictionary of Architecture & Construction, all of which Campo contends define the common usage of "contractor" to mean one who "contracts to construct." *Id.* at 7–8. Campo also points out that the laws governing the conduct of architects are distinct from those governing the conduct of contractors. *Id.* at 8. For example, in Louisiana, there are separate laws governing preemption, immunity, and licensing for architects that are distinct from those governing contractors. *Id.* at 8–9.

In support of its argument, Campo cites *State ex rel. Guste v. Simoni, Heck & Assocs.*, in which the Louisiana Supreme Court found "architects and engineers are not considered 'contractors' for purposes of public contracts," as "the chief statutory regulation of the performance of architects and engineers in connection with public works (regulating their use of closed specifications), recognizes the distinction between them and the contractors who bid upon or use the specifications prepared by the architects and engineers for public works." 331 So. 2d 478, 485–86 (La. 1976). The court based its finding, in part, on the fact that "in the licensing of contractors for construction, etc., of works, expressly exempted from the statutory definition of a contractor are architects and engineers in the performance of their usual services." *Id.*

In this case, the Court agrees with Cotton Exchange that a general reference to "contractor" validly transferred to Cotton Exchange Supreme Bright's personal right to sue any "contractors or

8

vendors engaged by [Supreme Bright] prior to the Closing Date." It does not follow, however, that a general reference to a contractor necessarily includes an architectural firm, such as Campo. In its opposition, Campo references several dictionaries' definitions of "contractor," all of which suggest that that the "common usage" of the term is "a person who pursues an occupation or business, wherein he contracts to render services for others, including public bodies, in building, painting, excavating, etc." *Contractor*, BALLENTINE'S LAW DICTIONARY (3rd ed. 2010); *see also Contractor*, MERRIAM-WEBSTER, https://www.merriam-webster.com (last visited Aug. 8, 2019) ("[O]ne that contracts to erect buildings."); *Contractor*, BLACK'S LAW DICTIONARY (11th ed. 2019) (providing "roofing contractor" as an example of a contractor). These definitions, however, also state, as Cotton Exchange points out, that a contractor is simply "one that contracts to perform work or provide supplies." *Contractor*, MERRIAM-WEBSTER, https://www.merriam-webster.com (last visited Aug. 8, 2019); *Contractor*, BALLENTINE'S LAW DICTIONARY (3rd ed. 2010) ("Literally, a person who has assumed obligations as a party to a contract."). Given that these dictionary definitions do not definitively resolve the issue, the Court turns to Campo's second argument, that Louisiana law treats contractors and architects differently.

The statutory schemes regulating the conduct of architects and contractors are distinct under Louisiana law. For example, Louisiana Revised Statute § 9:5607 governs preemption with respect to architects, while § 9:2772 pertains to contractors. Similarly, Louisiana Revised Statute § 37:154 dictates licensing for architects, while Louisiana Revised Statute § 37:2150 governs contractors' licensing. Various articles in the Louisiana Civil Code also treat "contractors" and "architects" as separate entities. *See, e.g.*, La. Civ. Code art. 3500 (referring to actions as either being against "a contractor *or* an architect" (emphasis added)).

Moreover, although *Guste*'s holding—that "in the licensing of contractors for construction, etc., of works, expressly exempted from the statutory definition of a contractor are architects and

9

engineers in the performance of their usual services"—is not directly on-point, it is persuasive. 331 So. 2d at 485. Here, although the contract at issue is not a public contract like the one at issue in *Guste*, the industry custom distinguishing contractors and architects as well as the separate statutory provisions governing contractors and architects cannot be ignored.

Finally, even if Cotton Exchange and Supreme Bright's use of the term "contractor" in the Amended Assignment and Assumption Agreement were ambiguous, "[w]here the language in the contract is ambiguous, it should be construed against the drafters." *Frischhertz Elec. Co. v. Hous. Auth.*, 534 So. 2d 1310, 1313 (La. App. 4 Cir. 1988); *see* La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."). Thus, to the extent the term "contractor" is ambiguous, the Court construes the term in favor of Campo. Accordingly, the Court finds Campo is not a contractor under the Amended Assignment and Assumption Agreement's terms. As a result, the Court will deny Plaintiff's motion for reconsideration.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff Cotton Exchange Investment Properties, LLC's Motion for Reconsideration of the Court's Partial Denial of Summary Judgment, R. Doc. 229, be and hereby is **DENIED**.

New Orleans, Louisiana on this 21st day of August, 2019.

_____
Eldon E. Fallon
U.S. District Court Judge