UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COTTON EXCHANGE INVESTMENT | CIVIL ACTION |
| VERSUS | NO. 16-17543 |
| XCEL AIR CONDITIONING ET AL. | |
| **ORDER AND REASONS** | SECTION "L" (5) |

Before the Court is a motion for partial summary judgment filed by Defendant Xcel Air Conditioning Services, Inc. R. Doc. 247. The motion is opposed. R. Doc. 260. Defendant filed a reply. R. Doc. 265-2. The Court now rules as follows.

I. **BACKGROUND**

Plaintiff Cotton Exchange Investment Properties LLC ("Cotton Exchange") alleges its hotel was damaged as a result of faulty workmanship performed by Defendants Commercial Renovation Services, Inc. ("CRS") and John T. Campo & Associates ("Campo") during the hotel's renovation. R. Doc. 23 at 2. Cotton Exchange further contends the hotel also sustained damages as a result of defective maintenance and repairs to the hotel's HVAC system performed by Defendant Xcel. Cotton Exchange filed suit, seeking recovery for its damages.

In its complaint, Plaintiff alleges that in 2014, Supreme Bright New Orleans LLC ("Supreme Bright"), which owned the hotel at the time, executed several contracts for its renovation. R. Doc. 23 at 2. In January 2014, Supreme Bright contracted with Xcel to provide HVAC services, including the maintenance of the hotel's cooling tower, roof top units, and chilled water pumps. R. Doc. 1 at 3. That same month, Supreme Bright entered into a contract with Campo, whereby Campo would provide architectural, design, and engineering services. R. Doc. 23 at 4. A few months later, Supreme Bright contracted with CRS to serve as general contractor

1

for the project. R. Doc. 23 at 2.

In June 2015, Pacific Hospitality Group ("PHG") entered into a purchase agreement with Supreme Bright to buy the hotel whereby PHG would assume the rights to all three contracts. R. Doc. 1 at 3. PHG subsequently assigned all of its rights, title, and interest in the purchase to Cotton Exchange, including the contracts with Xcel, Campo, and CRS. Thereafter, Cotton Exchange executed the purchase agreement with Supreme Bright (the "Assignment and Assumption Agreement"). R. Doc. 1 at 4. On January 31, 2017, Cotton Exchange and Supreme Bright entered into a settlement agreement resolving a matter unrelated to the issue at bar, wherein the parties amended the Assignment and Assumption Agreement's terms by adding the following language:

> Assignor hereby assigns, transfers and conveys all of Assignor's rights, title and interest in and to the Assigned Property, including all contractual and personal rights in and/or related to the Hotel, including without limitation the personal right to sue for damages, that Assignor has against CRS, subcontractors and vendors to CRS, and any other contractors or vendors engaged by [Supreme Bright] prior to the Closing Date.

R. Doc. 199-8 at 4–5.

Cotton Exchange alleges that under the terms of their respective contracts, Cotton Exchange was indemnified by all three Defendants for any property damage caused by their negligent acts or omissions related to the scope of their work. R. Doc. 1 at 5; R. Doc. 23 at 3–4. According to Cotton Exchange, the hotel suffered serious moisture damage as a result of Defendants' faulty workmanship, including water damaged walls and floors due to exposed chilled water piping, missing or improperly sealed insulation, and cracked or leaking draining pans. R. Doc. 23 at 7. Cotton Exchange claims it had to close the hotel because of this extensive damage. R. Doc. 23 at 6. Cotton Exchange canceled the HVAC contract pursuant to its terms in December 2015 and notified Xcel of the damage on three occasions. R. Doc. 1 at 5, 6. Xcel did not respond to the demand for indemnity. R. Doc. 1 at 6. Additionally, Cotton Exchange avers it demanded

indemnity from CRS and Campo but was also unsuccessful in these demands. R. Doc. 23 at 7. Consequently, Plaintiff filed suit on December 16, 2016, bringing breach of contract and negligence claims against all three Defendants and breach of warranty of good workmanship claims against CRS and Campo. R. Doc. 23 at 7–16.[1]

On May 14, 2019, Xcel filed a motion for partial summary judgment, contending Cotton Exchange had not been assigned the personal right to sue Excel under two repair contracts and a fan coil unit cleaning contract. R. Doc. 195-1 at 2-3. The motion was unopposed as to the two repair contracts and was therefore partially granted to that extent. R. Doc. 210 at 6. However, the Court denied the motion as to the fan coil unit cleaning contract, reiterating that the Settlement Agreement reached between Supreme Bright and Cotton Exchange served as a valid transfer of Supreme Bright's personal right to sue "any other contractors or vendors engaged by [Supreme Bright] prior to the Closing Date." R. Doc. 210 at 6.

**PRESENT MOTION**

In the instant motion, Defendant Xcel contends Plaintiff Cotton Exchange is not entitled to recover attorney fees from Xcel under either Louisiana Civil Code article 2315 or the indemnification provision of the HVAC contract. R. Doc. 247-2 at 1. First, Xcel submits Cotton Exchange is not entitled to attorney fees under Louisiana negligence law because, as a general

---

[1] Defendants Campo and CRS were added on February 23, 2017 in Plaintiff's amended complaint. R. Doc. 23. On March 29, 2019, Defendant Campo filed a motion for summary judgment, R. Doc. 162, which the Court granted in part and denied in part, R. Doc. 190. With respect to Cotton Exchange's breach of contract and breach of warranty claims against Campo, summary judgment was granted because Campo and Supreme Bright's agreement contained language requiring Supreme Bright to obtain Campo's explicit consent to assign their agreement to a third party. R. Doc. 190 at 8. However, with respect to Cotton Exchange's negligence claims against Campo, summary judgement was denied because part of Cotton Exchange's complaint alleges it sustained damage caused by Campo during its ownership of the property. R. Doc. 190 at 10.
    On March 22, 2019, Defendant CRS filed a motion to dismiss, contending Cotton Exchange had no right of action in contract or tort. R. Doc. 156. On May 16, 2019, the Court denied CRS's motion, holding Supreme Bright retained its personal right to sue CRS after the sale to Cotton Exchange and thus validly transferred this right to Cotton Exchange over a year after the sale. R. Doc. 198.

matter, Louisiana law does not permit recovery of attorney fees "except where authorized by statute or contract." R. Doc. 247-2 at 2 (quoting *Stutts v. Melton*, 2013-0557, p. 8 (La. 10/15/13); 130 So. 3d 808, 814). Second, Xcel contends Cotton Exchange is not entitled to attorney fees pursuant to the HVAC contract because the contract "does not specify that plaintiff is entitled to recover attorney's fees, and that language is necessary in an indemnity agreement if it is to be interpreted to allow the recovery of attorney's fees." *Id.* at 2. In support of this argument, Xcel relies on the longstanding rule from *Kinsinger v. Taco Tico* that, "absent some specific language in the indemnification contract, attorney fees and defense costs are not owed." *Id.* at 2 (quoting 2003-622, p. 7 (La. App. 5 Cir. 2003); 861 So. 2d 669, 673). Pointing to the HVAC contract's indemnity provision, Xcel argues it "clearly does not authorize recovery of attorney's fees" because it contains "no specific reference to attorney's fees." *Id.* at 4.

In opposition, Plaintiff Cotton Exchange argues the indemnity provision is "broadly drafted to obligate Xcel to indemnify [Cotton Exchange] for *any* liability, including attorney's fees." R. Doc. 260 at 2. According to Cotton Exchange, the fact that the indemnity provision does not specifically reference attorney fees is not fatal because under *Kinsinger*, "an indemnification agreement may impose the obligation to pay reasonable attorney fees in some instances when the obligation to pay attorney fees is not specifically identified in the indemnification agreement, but is implied by inference." *Id.* at 3 (quoting 2003-622, p. 6; 861 So. 2d at 673). Cotton Exchange argues that the language of the indemnification provision, which requires Xcel to indemnify and hold harmless Cotton Exchange from "any liability and claims for any property damage" caused by Xcel, implies that attorney fees are recoverable.

Xcel filed a reply, acknowledging that the obligation to pay attorney fees may be implied in a contract, but arguing that the HVAC contract contains no such implication. R. Doc.

4

265-2 at 3.

## II. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party

5

opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

**B. Analysis**

As an initial matter, the parties do not offer any competing issues of material fact. In its Statement of Uncontested Facts, Xcel notes that Cotton Exchange claims entitlement to attorney fees under article 2315 of the Louisiana Civil Code and pursuant to paragraph 14 of the HVAC Contract. R. Doc. 247-1 at 1. Xcel also quotes the pertinent language from the contract. R. Doc. 247-1 at 1-2. In opposition, Cotton Exchange does not dispute any of these facts and instead notes only that paragraph 14 of the HVAC contract "requires Xcel to indemnify [Cotton Exchange] for its attorney's fees." R. Doc. 260-1 at 2. Because the parties do not dispute the existence or construction of paragraph 14, the Court concludes that the dispute involves an issue of contract interpretation, not an issue of material fact. "The interpretation of contract provisions is typically a matter of law that properly may be decided on motion for summary judgment." *Robin v. Wong*, 2007-0547 (La. App. 4 Cir. 10/24/2007); 971 So. 2d 386.

Specifically, paragraph 14 of the HVAC contract provides:

Contractor hereby indemnifies and holds Customer and its officers, partners, directors, employees and agents harmless from any liability and claims for any property damage or bodily injury or death of a person in or on Customer's premises caused in whole in part by the negligence of contractor or the negligence of its employees, agents, servants, customers, invitees or licensees or if contractor is adjudicated liable along with others, in proportion to the degree of responsibility allocated to contractor. R. Doc. 23-2 at 9.

"As a general rule Louisiana law does not permit recovery of attorney's fees in absence of a statutory provision allowing recovery or a contractual agreement by the parties to pay attorneys fees." *Kinsinger*, 861 So. 2d at 671-72. (citing *Richey v. Moore*, 36,785 (La. App. 2 Cir. 3/7/03); 840 So. 2d 1265). A contract may impose an obligation to pay attorney fees when such a

6

requirement is expressly provided in the contract or when the obligation is "implied by inference." *Id.* at 673. An indemnitor may be liable for attorney fees only if the contract language is "sufficient to infer the obligation." *Id.* Typically, specific language "beyond the obligation to pay 'claims or damages'" is required. *Id.* Many courts have found an obligation to pay attorney fees implied by contract language referencing a duty to defend. *See Burns v. McDermott, Inc.*, 95-0195, p. 6-7 (La. App. 1 Cir. 11/9/95); 665 So. 2d 76, 79 (finding an obligation to pay attorney fees when the contract required a subcontractor to "bear the expense of the investigations and defenses of all claims"); *S. Cent. Bell Tele. Co. v. Gaines Petroleum Co.*, 499 So. 2d 521, 525 (La. Ct. App. 2d Cir. 1986) (allowing recovery for attorney fees where the language "clear[ly] and unambiguous[ly]" obligated one party to "hold harmless *and defend*" the other).

In this case, the parties do not point to any statute purportedly authorizing an award of attorney fees. Therefore, the Court considers only whether the language of the HVAC contract authorizes such an award. Paragraph 14 makes no explicit reference to attorney fees. See R. Doc. 23-2. Xcel argues that "without a direct reference to attorney's fees or an implication referencing a duty to defend," attorney fees must be excluded. R. Doc. 265-2 at 1 (emphasis omitted). In contrast, Cotton Exchange urges that attorney fees are implied by the broad requirement that Xcel indemnify Cotton Exchange for "any liability or claims." R. Doc. 260 at 4. In support of its contention, Cotton Exchange points to *Curtis v. Curtis*, where the court found an obligation to pay attorney fees implied in a community partition agreement requiring either party to indemnify the other "for any loss" sustained "by virtue of the other failing to pay the debts assumed [therein]." *Id.* at 3 (emphasis omitted) (quoting 28,698, p. 9 (La. App. 2 Cir. 9/25/96); 680 So. 2d 1327, 1332). Cotton Exchange urges that, under *Curtis*, an indemnitor "is liable for reasonable attorney fees incurred by the obligee, even though the obligatory provision does not specifically authorize

7

attorney fees." *Id.* (quoting 680 So. 2d at 1332).

Paragraph 14 of the HVAC contract requires indemnity from "any liability and claims." R. Doc. 23-2. The contractual language is strikingly similar to that in *Kinsinger*, in which the court denied recovery of attorney fees where the underlying contract required indemnity for "any claims or damages." *See* 861 So. 2d at 671. The *Kinsinger* court noted that the contract contained no reference or implication to a duty to defend that would imply an obligation to pay attorney fees. *Id.* at 673.

The Court also finds the contractual language in the instant case distinguishable from that in *Curtis*, which obligated either party to pay for "any loss" sustained by the other party's failure to pay a debt assumed under the partition agreement. 680 So. 2d at 1332. Although attorney fees were recoverable in *Curtis* despite the lack of specific authorization, the contractual language "required an obligation beyond the obligation to pay 'claims or damages'" present in the HVAC contract. *Kinsinger*, 681 So. 2d at 673 (citing *Curtis*, 680 So. 2d 1327).

Paragraph 14 of the HVAC contract does not expressly require Xcel to pay Cotton Exchange's attorney fees, nor does it include any reference to a duty to defend or other obligation that "implie[s] by inference" that recovery for attorney fees was contemplated by the parties. As a result, the Court concludes paragraph 14 of the HVAC contract does not require Xcel to pay Cotton Exchange's attorney fees.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant Xcel Air Conditioning Services, Inc.'s Motion for Partial Summary Judgement, R. Doc. 247, be and hereby is **GRANTED**.

New Orleans, Louisiana on this 9th day of September, 2019.

_____
Eldon E. Fallon
U.S. District Court Judge